Vickery, J.
This cause comes into this court on a petition in error to the common pleas court of Summit county to reverse a judgment of the court of common pleas entered upon a verdict of first-degree murder found by the jury, and without recommendation for mercy. The defendant, Peter Caferelli, was sentenced to be electrocuted, which sentence was suspended pending error proceedings in this court.
Some eight assignments of error are set forth in the petition in error, many of which it will not be necessary for us to consider in view of the conclusion that we have reached respecting one of the assignments of error. Suffice to say that we would be unable to agree with the claims of the plaintiff in error that the verdict was not sustained by sufficient evidence; nor do we think' there was any *93 error in the refusal of the court to allow a change of venue, for whether a court will grant such a motion and allow such a change of venue is largely a matter of discretion of the court and we can not find from this record that the court abused such discretion. Nor do we find any error that is prejudicial in the court’s refusal to charge as requested by the defendant below, inasmuch as those requests were contained in the written propositions to charge before argument, and there being at that time, if there is at present, no duty of the court requiring that it should grant the requests before argument either for the state or for the defendant. Nor do we find any error prejudicial to defendant in the general charge of the court.
'But we are met with a situation at the very threshold of the trial which challenges our attention, which is directed to the second assignment of error, to-wit, the failure of the court to- grant a continuance of the cause on motion. The assignment of error in the overruling of the motion relates to the manner in which the jury was empaneled.
Section 13642, General "Code, provides:
“When a person indicted for a capital offense pleads not guilty, the clerk, on the precipe of the prosecuting attorney, shall draw from the jury-box, as in other cases, thirty-six ballots, and issue to the sheriff a venire for the persons whose names are so drawn, for the day fixed for the trial; such venire shall be served and returned by such sheriff at least fifteen days before the day so fixed. If a person named therein is dead, insane, *94 absent, removed from the county, or not an elector thereof, or has been convicted of felony and not pardoned, the sheriff shall note the fact in his return.”
Section 13643 provides:
“If it appear to the clerk, by the return of the sheriff, that a person named in the venire is dead, insane, absent, removed from the county, or not an elector thereof, or has been convicted of a felony and not pardoned, the clerk shall draw from the box a number of ballots equal to double the number of such persons dead, absent or so disqualified, and issue to the sheriff a venire for them, for the day fixed for the trial. The sheriff shall serve and return such venire as soon as possible, in the manner provided in the next preceding section. If it appear to the clerk, from such return, that the names of thirty-six qualified jurors are not in the venires, he shall draw ballots and issue venires, to be served and returned in like manner, until the required number thereof are summoned.”
Section 13644 provides:
“The first thirty-six jurors answering to their names at the trial, and without the disqualifications named in the next preceding section, shall constitute the panel. If it appears to the court upon the impanelling of such jury that there are not thirty-six jurors summoned and present, without such disqualifications, the court may, and, upon motion of the defendant, shall order the clerk to draw from the box, as in other cases, a sufficient number of ballots to make thirty-six competent jurors.”
*95 Section 13648 says:
“A copy of the panel of the jury returned by the sheriff shall be delivered to a person so indicted at least three days before-the day of trial.”
Now, referring to Section 13644, where it says that “the first thirty-six jurors answering to their names * * * shall constitute the panel,” it is perfectly evident that when, in Section 13648, it says, “A copy of the panel of the jury returned * 155 * shall be delivered to a person so indicted at least three days before the day of trial,” it must ■mean that a copy of the entire list of jurors, to-wit, thirty-six that the sheriff has been able to locate and return under the various ways and venires designated and provided in the preceding section of the statute, shall be the list of names that are served upon the defendant.
In the case at bar thirty-six names were drawn from the wheel as the statute requires, upon a precipe of the prosecuting attorney, and were given to the sheriff by the clerk. The sheriff served all these men with the exception of three. Thereafter, a new venire was issued for six names, and these were served, or enough of them were served to make the thirty-six names. The record shows that the sheriff served a copy of his return upon the defendant, that three of the men named in the first venire were not found and that subsequently the new venire was issued and a copy of that return was served on the defendant by the sheriff; but the record does not show that the entire panel was served upon the defendant at any time before trial.
It appears that the first thirty-three names were served upon the defendant within the time allowed *96 by the statute, but that after the trial had proceeded, by starting to empanel the jury, one man having been selected, a copy of the writ summoning the three to fill up the panel was served upon the defendant. It was then that an application was made for time in accordance with the statute, which ultimately resulted in a motion by the defendant in open court for a continuance for three days in order to have time to examine into the qualifications of these three names. Whereupon the court stated that the defendant should have ample time to examine these three names, but insisted upon going forward with the examination of the other men still unexamined, who constituted the first thirty-three names of the panel, all of which was done over the objection of the defendant, and ■exceptions properly taken.
■Finally the court inquired' how much time the defendant wanted, and he insisted, through his counsel, that he was entitled to the three days and would not consider any other proposition. The court said he felt disposed to give him from eleven •o’clock until half-past one that day, and when the defendant insisted upon the three-day continuance the court said he would not give any such time and counsel might as well proceed with the trial.
The trial was proceeded with over the objection of the defendant, and the exception was saved in the record.
Now, then, the question is, whether this failure to have the panel of thirty-six names served upon the defendant within at least three days before the trial is such error as would warrant a reversal of this judgment.
*97 We have long since got by the day when cases should be reversed for mere technicalities, and, unless a right of the defendant was abridged by the failure to have the proper panel served upon him, it was merely a technical error and should not be considered by the court; if a right was abridged the contention is warranted.
We are of the opinion that in so grave a case as one of first-degree homicide, where a man’s very life is at stake, the forms of law should be strictly followed, and that the method pointed out by the statute is not merely directory but mandatory.
“Generally, when no rights will be impaired, provisions, with no negative words or implications, concerning the time and manner, and more especially the time, in which official persons shall perform designated acts, are directory. * * * And largely the statutes relating to the time and manner of summoning and bringing in jurors are of this class. [Citing State v. Pitts, 58 Mo., 556; State v. Gillick, 7 Iowa, 287; State v. Smith, 67 Me., 328, and other cases.] The same is true of those providing for other, steps in a judicial cause. But a provision of this or any other sort which, though in the nature of a command to an officer or court, confers rights on parties, is generally or always mandatory.” Bishop on Statutory Crimes (3 ed.), Section 225, citing Ex parte Jordan, 94 U. S., 248; People v. Livingston, 68 N. Y., 114; Wendel v. Durbin, 26 Wis., 390, and State v. Cooper, 45 Mo., 64.
We think defendant had a right to have a copy of the panel of the jury delivered to him at least three days before the day of trial; in other words, *98 that Section 13648 conferred upon such person a right, and made the method of procuring the panel mandatory, and that defendant was entitled to have all the names of the entire panel in time to examine them and inquire into their qualifications, or biases, or prejudices, before being compelled to submit his life to their judgment.
In the case of McGill v. The State, 34 Ohio St., 228, it was held, reading from the first proposition of the syllabus:
“Where, in a capital case, a person not summoned as a juror personates one who was returned on the venire, sits at the trial and joins in a verdict of guilty, the verdict will be set aside and a new trial granted, it appearing that neither the accused nor his counsel was guilty of laches.”
It appeared in that case that one Eli Stephenson, whose name was on the venire, was regularly summoned and returned by the sheriff as a juror for the trial of the cause. At the trial the father of the juror so summoned, but bearing the same name in full, appeared, and, when the name of Eli Stephenson was called, answered to the same, stepped forward, took his seat in the jury box, and sat at the trial. The discovery that he was not the juror summoned was not made until after the trial was over, when a motion for a new trial was made by the accused on the ground that he had not been tried by a legally constituted jury. The motion was overruled, upon which action of the court error was predicated. Judge Boynton, speaking for the court, takes up at length the question here under discussion, and on page 236 says:
*99 “The statute (74 Ohio L. 345, § 7) requires a copy of the panel of the jury returned by the sheriff to be delivered to the accused at least three days before the day of trial. This requirement was complied with in the present case. The plaintiff was, therefore, apprised that one Eli Stephenson was one of the regular jurors summoned for his trial; and when such juror was called, a person by that name appearing and answering thereto, we think he might well assume such person to be the regular juror. If the person so appearing had borne another name, and had personated the absent juror, this clearly, under the authorities, would have been ground for a new trial, if the fact of such personation was unknown to the accused in time to correct the error before he was prejudiced thereby.”
The court quotes this to show that the party had the right to have a panel served upon him, and, that, inasmuch as a man bearing the same name as the man in the panel answered to the name, the defendant was not guilty of laches, and, therefore, had waived none of his rights, but the court says, page 237:
“The irregularity being such as materially to affect a substantial right of the accused, and by which he was prevented from being tried by a legally constituted jury, the verdict should have been set aside and a new trial granted.”
We draw from this that the right to have a copy .of the panel served upon the defendant at least three days before the trial was a substantial right of the defendant, and that that didn’t mean a part of the panel but the entire panel of thirty-six names.
*100 If this was a right that the defendant had, then of course a departure from the statutory method would be a violation.
In the case of Cantwell v. The State of Ohio, 18 Ohio St., 477, it is said at page 480, that when the legislature has clearly evinced a purpose to distinguish the practice in criminal trials from that allowed in civil cases, and to prohibit in one class of trials what is permitted in the other, the provisions must be regarded as mandatory.
Now it will be noticed that the legislature has seen fit to provide a particular way for procuring a jury in first-degree homicide cases, different from that in all other criminal cases, and when it marked out the manner in which that panel should be selected, and provided for the issuing of various venires to obtain the result, the law must have been mandatory and for the very purpose of conferring a right upon the defendant; which, of course, he might waive. But in this case he didn’t waive, so when he insisted, by his attorneys, that he have three days from the time the completed panel was served upon him, he was clearly within his rights.
In Thurman v. The State, 4 C. C., 141, it is held that where a copy of the panel is served less than three days before the time set for trial, and the case is then laid over to a future day more than, three days after the defendant receives a copy of the panel, there is no error.
Again, in Williams v. The State, 11 C. C., N. S., 4, in the first proposition of the sjdlabus, it is held:
“A verdict of conviction will not be set aside on the ground that a true copy of the panel as returned by the sheriff was not delivered to the accused *101 as required by Section 7273, Revised Statutes, where the irregularity complained of is not carried into the bill of exceptions but is brought to the attention of the court by an affidavit to which is attached a paper writing and what purports to be a copy of the jury panel.”
In Williams v. The State it was attempted to show by affidavit outside of the record that a true copy of the panel as returned by the sheriff was not delivered to the defendant, and the court held that it was powerless to consider matters outside of the record, and in respect to the affidavit that it did not bring the matter into the record at all and was not in a condition to be considered by the court. The inference from the ruling of the court in this case is clear, that if this objection was made "at the time and a proper exception taken, and it was properly in the record, then the failure to deliver a true copy of the panel would have been a fatal error which would have warranted the reversal of the court below. Judge Taggart, rendering the opinion of the court, cited several authorities in Ohio and outside of the state to show what was properly a part of the record and could be considered by the court.
From these authorities, and many others to which our attention has been directed, we are clearly of the opinion that the defendant had the right to have this panel of thirty-six names served upon him at least three days before the trial, and that he objected to the fact that it was not so served upon him and carried it into the record and ■took a proper exception, so that it can not be said that he waived his rights in any way whatever. *102 We are therefore obliged, under the authorities, much as we dislike to do so — for we have not only considered this record, but the record in the case in which his associate, Vincent Damico, was convicted — and we believe the two records show conclusively that the jury were warranted in rendering the verdict they did — we are therefore obliged, and under the circumstances we say we regret that we are, to reverse this case and remand it to the court of common pleas for a new trial.
Just who is to blame for having this situation brought about it is not for us to say. Suffice it to say that when a man is charged with the gravest of all offenses, for which his life is the forfeit, he is entitled, nay, is guaranteed by the Constitution of the State of Ohio and the Constitution of the United States, to have all the safeguards of the law thrown around him, and it will not do for the officers who have charge of the enforcement of the law to neglect or refuse to obey the plain mandates of the law as to the manner and method of selecting the instruments through which the law must be carried into effect.
In a recent decision, which reverses this court, in the case of The Cleveland Railway Co. v. Brescia, 100 Ohio St., 267, the supreme court of Ohio has tightened up the lines on the selection of jurors even in civil cases, and has ruled the method of selection of jurors mandatory, where hitherto the courts have been constrained to hold it directory merely. I cite this to show that in spite of the modern trend of the judiciary to avoid mere technicalities, and to hold much as directory which otherwise would be mandatory, here is the last *103 announcement of our supreme court on that proposition holding the officers whose duty it is to select jurors to a strict adherence to the law.
We are therefore constrained to come to the conclusion that the court erred in refusing to grant the postponement as requested by the plaintiff in error; that the error is such that the plaintiff in error’s substantial rights were interfered with; that he did not, and could not under such conditions, have such a trial as was guaranteed to him by the law; that the court for this reason should have granted the motion for a new trial; and that the refusal to do so was error so prejudicial to the defendant that the case should be and is hereby reversed and remanded to the court of common pleas for new trial.

Judgment reversed, and cause remanded.

Dunlap, P. J., and Washburn, J., concur.