**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2371
_____

SPINNER CONSULTING LLC,
Appellant

v.

BANKRUPTCY MANAGEMENT SOLUTIONS, INC.
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:18-cv-12258)
District Judge: Hon. Kevin McNulty
_____

Argued November 20, 2019

Before: CHAGARES, MATEY, and FUENTES, *Circuit Judges*.

(Opinion filed:  January 3, 2020)

William Dunnegan (Argued)
Dunnegan & Scileppi
350 Fifth Avenue
Suite 7610
New York, NY 10118

 Counsel for Appellant

Jonathan M. Herman (Argued)
Kaleb McNeely
Dorsey & Whitney
51 West 52nd Street
New York, NY 10019

Michael A. Lindsay
Dorsey & Whitney
50 South Sixth Street
Suite 1500
Minneapolis, MN 55402

  Counsel for Appellee

_____

OPINION[*]

_____

FUENTES, *Circuit Judge*.

  Spinner Consulting LLC ("Spinner") appeals the District Court's dismissal of this antitrust action against Bankruptcy Management Solutions, Inc. ("BMS"). Because we conclude that Spinner's claim against BMS was released, we will affirm.

I.

  As we write solely for the parties, we recite only the facts essential to our decision. This action arises out of the Chapter 7 petition filed by Robert Fusari in the United States Bankruptcy Court for the District of New Jersey. Alan E. Gamza was appointed trustee of the Fusari estate and, in June 2015, contracted on its behalf with BMS to receive certain banking and software support services necessary to carry out his responsibilities as trustee. Pursuant to the contract, BMS received fees from the Fusari estate during the bankruptcy proceeding.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

In May 2016, the Bankruptcy Court entered an order enforcing and approving a settlement agreement (the "Settlement Order"), resolving the Fusari bankruptcy proceedings. The Settlement Order contained a general release provision, in which "the estate and the Debtor on his own behalf and on behalf of his Entities, . . . successors and assigns" agreed to "release, acquit and forever discharge the Parties . . . and their . . . independent contractors [and] agents . . . from any and all . . . suits [and] claims . . . that the Debtor or any of the Entities has, had or may have, arising from facts . . . from the beginning of time until the Effective Date of this Settlement Agreement, including . . . all claims . . . that were raised or could have been raised in this Bankruptcy Case or relating to the Bankruptcy Case."[1]

The Settlement Order defined "Parties" to include Fusari, his wholly-owned business entities, and Gamza as trustee.[2] The Settlement Order further specified that "the Bankruptcy Code and to the extent applicable," New Jersey law would govern its interpretation.[3]

After the remaining property of the Fusari estate revested in Fusari, he assigned all remaining claims arising from the bankruptcy to Spinner, which brought an antitrust action under Section 1 of the Sherman Act,[4] alleging a horizontal price-fixing conspiracy with its competitors. According to the complaint, the harm occurred between June and December 2015, when the Fusari estate's bank collected BMS' fee.

---

[1] App. 103–04.
[2] App. 93.
[3] App. 112.
[4] 15 U.S.C. § 1.

BMS moved to dismiss the complaint, arguing, *inter alia*, that Spinner lacked antitrust standing and that its claim was released by the Settlement Order. The District Court granted the motion to dismiss for lack of antitrust standing without considering BMS' remaining arguments. This appeal followed.

II.[5]

We conclude that the Settlement Order released any claim Fusari, and thus Spinner, might have had following the bankruptcy proceeding.[6] According to Spinner, its antitrust claim arose during the Bankruptcy proceeding, when BMS' intermediary deducted its allegedly anticompetitive fees, thus falling within the release period.[7]

Whether BMS acted as a contractor for Gamza, the trustee, or the Fusari estate, the Settlement Order bars Spinner's complaint. First, the Settlement Order released BMS as an independent contractor or agent of the trustee, one of the "Parties" covered by the

---

[5] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291. "We review de novo a district court's grant of a motion to dismiss and construe all facts in the light most favorable to the nonmoving party." *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 806 F.3d 162, 170 n.8 (3d Cir. 2015). We can affirm on any basis that finds support in the record. *See Fairview Twp. v. U.S. Envtl. Prot. Agency*, 773 F.2d 517, 525 n.15 (3d Cir. 1985).

[6] *See In re Complaint of Bankers Tr. Co.*, 752 F.2d 874, 883 (3d Cir. 1984) ("It is well-established that a release is the giving up or the abandoning of a claim or right to the person against whom the claim exists or the right is to be enforced or exercised . . . ."). We agree with the parties that, pursuant to the Settlement Order's choice-of-law provision, New Jersey law applies to our interpretation of its terms. App. 112; *see also Mullen v. N.J. Steel Corp.*, 733 F. Supp. 1534, 1548 (D.N.J. 1990) ("New Jersey follows traditional contract principles on release of actionable claims.").

[7] *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 105–06 (3d Cir. 2010) ("[A]n antitrust cause of action generally 'accrues . . . when a defendant commits an act that injures a plaintiff's business.'") (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971)).

4

release.[8]  As Spinner's complaint acknowledges, "BMS entered into a contract with Gamza," even though he was acting in his capacity as trustee, making BMS his contractor.[9]

Second, even if BMS was not released as a contractor of the trustee, it was released as a contractor of the estate itself.  The expansive language of the Settlement Order operated to release each of the "Parties" involved in the bankruptcy case, including the estate, of all potential claims against the other parties.[10]

Spinner argues that the scope of the release is limited to claims of the "Debtor or any of the Entities," excluding claims of the Fusari estate.[11]  Not so.  The Settlement Order explicitly defined the terms "Entities," the "Debtor," and "Fusari" to encompass collectively "Robert Fusari, on behalf of himself, *his chapter 11 estate*, and each of his wholly owned entities."[12]  Unlike other sections of the Settlement Order, which explicitly excluded certain parties, the release language contained no such carveout.[13]  Spinner's reading is also inconsistent with the inclusion of the Fusari estate earlier in the paragraph and with the broad framing of the release.

---

[8] App. 93.

[9] App. 48; *see MacLean Assocs., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 778 (3d Cir. 1991) ("An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking.") (quoting Restatement (Second) of Agency § 2(3) (Am. Law Inst. 1958)).

[10] App. 93

[11] Reply at 13 (quoting App. 104).

[12] App. 93 (emphasis added).

[13] *Cf.* App. 102 (excluding "the estate and the Debtor" from "the Parties").

Spinner further urges us, in the alternative, to examine if there is an issue of fact as to whether the parties intended BMS to benefit from the Settlement Order. Since we conclude that the language of the release is unambiguous, no inquiry into the subjective intent of the parties is required.[14] The Settlement Order released any claim that might have revested in Fusari, and thus Spinner, as assignee, is also barred by its terms.[15]

III.

For these reasons, we will affirm the order of the District Court.

---

[14] *See Karl's Sales & Serv., Inc. v. Gimbel Bros., Inc.*, 592 A.2d 647, 650 (N.J. Super. Ct. App. Div. 1991) ("[W]here the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written."); *cf. Schor v. FMS Fin. Corp.*, 814 A.2d 1108, 1112 (N.J. Super Ct. App. Div. 2002).

[15] *See CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 178 (3d Cir. 2014) ("It is a basic principle of assignment law that an assignee's rights derive from the assignor.").