879 F.2d 311
 64 A.F.T.R.2d 89-5139, 89-2 USTC P 9413
 UNITED STATES of America, Brenda Kessel, Revenue Agent,
I.R.S., Appellees,
Agent, I.R.S., Appellees,
v.
Charles R. HEFTI and Marion Hefti, Appellants.
UNITED STATES of America and R. Michael Williamson, Revenue
Agent, I.R.S., Appellees,
v.
Charles R. HEFTI and Marion Hefti, Appellants.
 Nos. 88-1838, 88-2088.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 13, 1989.
Decided June 29, 1989.
Rehearing and Rehearing En Banc Denied Aug. 17, 1989.
 
 1
 Charles M. Shaw, Clayton, Mo., for appellants.
 
 
 2
 Calvin C. Curtis, Washington, D.C., for appellees.
 
 
 3
 Before FAGG and BEAM, Circuit Judges, and DUMBAULD*, Senior District Judge.
 
 
 4
 DUMBAULD, Senior District Judge.
 
 
 5
 The present appeals[1] involve the propriety of orders of the District Court for the Eastern District of Missouri holding appellants in contempt for failure to comply with prior orders requiring production of appellant's original records for examination by the IRS pursuant to 26 U.S.C. Sec. 7602.[2] For reasons hereinafter elaborated, we affirm.
 
 
 6
 From the declaration of purposes set forth in the opening words of Sec. 7602(a), it is clear that the authorization conferred upon the IRS by subsections (1) and (2) thereof "to examine" books, papers, records, or other data,[3] and to require their custodians "to produce" them and to "give ... testimony" relevant to the inquiry, contemplates utilization of such documents and testimony for the declared purposes, namely the correct calculation and collection of tax liability. Hence the obligation imposed upon taxpayers by Sec. 7602(a) is not satisfied unless the information supplied pursuant thereto is provided in such form and in such manner as will enable the IRS to utilize it effectively in fulfillment of the declared purposes, namely the calculation and collection of the correct tax liability of the taxpayers.
 
 
 7
 Present at the IRS office on May 15, 1988, were the appellants Charles and Marion Hefti, with their enrolled agent Joel Loewenstein, as well as an IRS attorney Robert Burbank, and Richard Gluck, a revenue agent.[4] The Heftis brought three briefcases (one for each of the tax years involved). Two tape recorders memorialized the meeting, one operated by the Heftis and one by the IRS.
 
 
 8
 As Loewenstein read off from the summons each item called for, the Heftis would hold up an envelope said to contain the material responsive to that item, and would hold up documents taken from the envelope, and then replace them. The IRS men could not see what was in the envelopes.[5]
 
 
 9
 The Heftis refused to turn over their records to the IRS, but were willing to have them examined in their presence, at that time, or to return later for further examination or photostating in their presence. At no time did the IRS ever have possession of the papers or an opportunity to utilize them meaningfully in any manner to determine the Heftis' tax liability.
 
 
 10
 The chief bone of contention, for the sake of which the Heftis were willing to face incarceration to prevent the issue from becoming moot, is whether the word "produce" in 26 U.S.C. Sec. 7602(a) means "make available" or means "turn over" to the IRS.[6]
 
 
 11
 However, we do not need to resolve that question[7] to dispose of the case at bar. It suffices to say that it was made perfectly clear to the Heftis that the District Court interpreted it as meaning "turn over" and did not accept the contrary Hefti position. The repeated rulings of the District Court constituted the law of the case; and if the Heftis chose not to acquiesce, their proper course was to appeal from, not to flaunt, the decisions of the District Court.[8]
 
 
 12
 Even before his memorandum and order of April 6, 1988, following the March 25, 1988, hearing requiring the Heftis to show cause why they should not be held in contempt, Judge Filippine was quite explicit in informing the Heftis that in his judgment "to produce" meant "to turn over" to the IRS their original records called for by the summons under 26 U.S.C. Sec. 7602(a). In the memorandum he explained:
 
 
 13
 The Court then ordered respondents to turn over their original documents to the petitioners and otherwise comply with the November 13, 1987 orders before April 11, 1988. The Court clearly indicated that failure to comply would result in a finding of contempt and the imposition of a fine.[9] The Court further found that respondents still have not complied with this Court's November 13, 1987 orders. According to the case law respondents are required to physically turn over the original documents and records requested, and not merely "present" the records. Therefore the actions of the respondents on March 15, 1988 did not constitute compliance [with 26 U.S.C. 7602] and 26 U.S.C. Sec. 7605 does not apply. Furthermore, their willingness to return with the records subsequently to the IRS office, is simply not practical.[10]
 
 
 14
 In the operative portion of the order itself Judge Filippine unequivocally ordered that "Respondents are directed to produce for examination, by turning over the originals, the items requested in the summonses dealing with the calendar year ending December 31, 1985, on or before April 11, 1988." [Italics supplied] The order went on to provide that each respondent, in the event of failure to comply "will be in contempt of Court and will be fined the sum of $50 per day" until such time as she or he complies with the order.[11]
 
 
 15
 Judge Gunn was no less explicit in his order of July 13, 1988. The Heftis were there "directed to obey the summonses issued on July 15, 1986" relating to the tax years 1983 and 1984 within ten days. To forestall any further equivocation, the order specifically went on to provide that "Said compliance shall consist of producing for examination the items described in the summonses by turning over to the Internal Revenue Service the relevant ledgers, journals, summaries, books of entry, and other records."[12] [Italics supplied]
 
 
 16
 What further demonstration could the Heftis ask for in order to realize that the District Court, with respect to all three taxable years involved, had adopted the IRS interpretation of 26 U.S.C. Sec. 7602(a) and rejected the interpretation so vehemently urged by the Heftis? Obviously it was the obligation of the Heftis to appeal to this Court if they were unwilling to acquiesce in the unequivocal rulings of the District Court.
 
 
 17
 The taxpayers were not free to disregard and ignore the court's decision and to behave in accordance with their own notions about the proper interpretation of the statutory language. U.S. v. United Mine Workers of America, 330 U.S. 258, 291-94, 300-03, 67 S.Ct. 677, 694-96, 699-701, 91 L.Ed. 884 (1947). Such private usurpation of the judicial function can not be countenanced. This is a long-recognized principle of law.
 
 
 18
 It remains to consider some subsidiary arguments advanced by appellants. Lack of jurisdiction is urged; but service of an order to show cause suffices to establish jurisdiction for contempt in an enforcement proceeding under 26 U.S.C. Sec. 7604(b). U.S. v. Miller, 638 F.2d 39, 40 (8th Cir.1980). Nor does issuance of a deficiency notice to prevent operation of the statute of limitations terminate the validity of a summons under 28 U.S.C. Sec. 7602(a) which was valid when issued. Couch v. U.S., 409 U.S. 322, 329, 93 S.Ct. 611, 616, 34 L.Ed.2d 548 (1973). The fact that Judge Gunn left the bench after warning Mrs. Hefti that he would terminate the hearing if she persisted in disregarding his rulings as to relevance, does not indicate prejudice or unfairness towards appellants.[13] Likewise there is no merit in appellants' contention that a civil contempt fine of $38,000 is invalid because it exceeds the $1000 criminal fine prescribed by 26 U.S.C. Sec. 7210 for failure to comply with a summons. Appellants were not being prosecuted criminally. It is an elementary rule that in civil contempt the sanctions are coercive (to encourage compliance), not punitive. Lamb v. Cramer, 285 U.S. 217, 220-21, 52 S.Ct. 315, 316-17, 76 L.Ed. 715 (1932); U.S. v. United Mine Workers of America, 330 U.S. 258, 300, 67 S.Ct. 677, 699, 91 L.Ed. 884 (1947).
 
 
 19
 A more dramatic claim is presented by the argument that Mrs. Hefti was wrongly taken into custody in the courtroom when she was there in connection with another of her tax cases. Of course there really does not exist any unconditional privilege that a person in court for one case cannot be subjected to execution of judicial process in another case.
 
 
 20
 The Supreme Court made clear in Lamb v. Schmitt, 285 U.S. 222, 225, 52 S.Ct. 317, 318, 76 L.Ed. 720 (1932), that:
 
 
 21
 The general rule that witnesses, suitors, and their attorneys, while in attendance in connection with the conduct of one suit are immune from service of process in another, is founded, not upon the convenience of the individuals, but of the court itself.... As commonly stated and applied, it proceeds upon the ground that the due administration of justice requires that a court shall not permit interference with the progress of a cause pending before it, by the service of process in other suits, which would prevent, or the fear of which might tend to discourage, the voluntary attendance of those whose presence is necessary or convenient to the judicial administration in the pending litigation.
 
 
 22
 After quoting a passage from Parker v. Hotchkiss,[14] the Court went on to conclude:It follows that the privilege should not be enlarged beyond the reason upon which it is founded, and that it should be extended or withheld only as judicial necessities require.
 
 
 23
 An earlier case, Stewart v. Ramsay, 242 U.S. 128, 130-31, 37 S.Ct. 44, 45-46, 61 L.Ed. 192 (1916), likewise makes plain that exemption from process is accorded only to non-residents not normally subject to suit in the jurisdiction.[15] But the Heftis lived in St. Louis, within the jurisdiction of the District Court; hence clearly Mrs. Hefti was not entitled to immunity.
 
 
 24
 From the record before us, it is clear that Judge Gunn found that it was more convenient to the due administration of justice to take Mrs. Hefti into custody while she was present in the courtroom rather than to delay the proceedings further. Mrs. Hefti had been put on notice by Judge Gunn's order of July 13, 1988, directing the arrest of the Heftis unless they turned over their records and paid the $38,000 arrears within 10 days.[16] On August 18, 1988, there having been no compliance, there was no reason why she should not have been taken into custody in the courtroom just as well as anywhere else.
 
 
 25
 Accordingly, the judgments of the District Court challenged in the present appeals are
 
 
 26
 AFFIRMED.
 
 
 
 *
 Dumbauld, Senior District Judge sitting by designation, from Pittsburgh, PA
 
 
 [1]
 In 88-2088 the Heftis appeal from Judge Gunn's order of July 13, 1988, 688 F.Supp. 1367 (1988), (Appellee's Appendix, hereafter cited as App.) 93-102. This order found the Heftis in contempt from April 9, 1988, until June 24, 1988, and directed payment of $38,000.00 within ten days. It also required turning over records to the IRS in pursuance of Judge Nangle's order of February 19, 1988 (App. 80-81) and his prior order of September 28, 1987 (App. 75) enforcing IRS summonses of July 15, 1986, concerning the tax years 1983 and 1984
 In 88-1838 the appeal is from Judge Filippine's order of April 6, 1988 (App. 46-56), based upon his prior order of November 13, 1987 (App. 30-31) enforcing IRS summons of February 17, 1987, relative to the tax year 1985.
 The consolidated appeals thus cover all three tax years, and appellants have contended that the events of May 15, 1988, when they brought their records for those years to the IRS office, displayed them, and departed with them, constitute compliance with the summonses.
 
 
 [2]
 26 U.S.C. Sec. 7602 provides, in pertinent part:
 (a) For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary of his delegate is authorized--(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry; (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.
 Judicial enforcement of orders under 26 U.S.C. Sec. 7602 is governed by 26 U.S.C. Sec. 7604(b). Only a refusal to comply with an order of the District Court subjects the witness to contempt proceedings. Reisman v. Caplin, 375 U.S. 440, 446, 84 S.Ct. 508, 512, 11 L.Ed.2d 459 (1964); Donaldson v. U.S., 400 U.S. 517, 524-25, 91 S.Ct. 534, 539-41, 27 L.Ed.2d 580 (1971).
 
 
 [3]
 It is of course true that the examination authorized by subsection (1) can be and often is performed by IRS agents at the premises of, and with the consent of, the taxpayers. But it would be folly to construe subsection (2) as requiring only physical production of papers in the hearing room, without allowing reasonable examination of them so as to permit intellectual apprehension of their content by the IRS agents conducting the audit. To "produce" under subsection (2) surely must mean to produce for reasonable examination, such as is contemplated by subsection (1)
 
 
 [4]
 The Heftis came at 3:30 p.m. and the office closed at 4:30. Transcript of show cause hearing before Judge Filippine, pp. 14-16. Brenda Kessel, the agent in charge of the Hefti case was on vacation. Reasonably enough, the two IRS personnel present did not wish to examine the material produced that day. Ibid., p. 44. Later Kessel repeatedly but unavailingly attempted to have the material brought in to be microfilmed. Ibid., p. 60
 
 
 [5]
 Ibid., p. 30, 37-38
 
 
 [6]
 Ibid., 30. As Mrs. Hefti realized (Transcript of hearing before Judge Gunn, pp. 109-110), upon turnover an appeal from an enforcement order becomes moot. U.S. v. Olson, 604 F.2d 29, 31 (8th Cir.1979); Barney v. U.S., 568 F.2d 116, 117 (8th Cir.1978)
 
 
 [7]
 On the merits of this issue, the government concedes that "there are no reported cases directly on point," but marshals cogent practical reasons against an interpretation that would permit an uncooperating taxpayer to "stultify" and obstruct a tax audit. Brief for the Appellees, pp. 13-14. On the other hand, if there were actual evidence of some form of "agency abuse of congressional authority and judicial process," such as bad faith, harassment, likelihood of loss or alteration of documents (of which the pro se taxpayers here are loquaciously apprehensive) the equity powers of the court could fashion an appropriate remedy. U.S. v. LaSalle National Bank, 437 U.S. 298, 318, 98 S.Ct. 2357, 2368, 57 L.Ed.2d 221 (1978). Normally production of documents in tax cases (as in ordinary discovery proceedings and grand jury subpoenas) can be arranged to suit the convenience of all parties involved by exercise of the professional courtesy and "civility" which retired Chief Justice Burger has urged lawyers to display. Warren Burger, Address to American Law Institute, May 18, 1971
 8 U.S. v. Rylander, 460 U.S. 752, 756, 760, 103 S.Ct. 1548, 1552, 1554, 75 L.Ed.2d 521 (1983); Bouschor v. U.S., 316 F.2d 451, 456 (8th Cir.1963) [Blackmun, J.]; Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964).
 
 
 [9]
 App. 48. The court was here emphasizing and repeating its oral directions given at the hearing on March 25, 1988. Judge Filippine then indicated that as a matter of law "to comply with the summons that requires a production for examination means to leave the original records with the Internal Revenue Service. And that is what the Court is ordering the respondents to do at this time
 * * *
 I say that under the court decisions you have to turn over those records and that is, I want it to be clear to you that that's what the summons says. And that's what the order of this Court requires to be done to comply with the summons. Is that clear?" Transcript of hearing before Judge Filippine, pp. 68, 73.
 
 
 [10]
 App. 52
 
 
 [11]
 App. 54
 
 
 [12]
 App. 93-94. Other provisions of this order found the Heftis to be "in civil contempt of this Court from April 8, 1988 until June 24, 1988" and requiring payment into the Registry of the Court within 10 days the sum of $38,000.00. The order also provided that "if respondents fail both to pay the aforementioned sum and obey the aforementioned summonses within the date specified herein," they "shall be apprehended and remain incarcerated until such time as they pay the aforementioned sum and obey the aforementioned summonses." In his accompanying memorandum Judge Gunn made it plain that he agreed with Judge Filippine's interpretation that "the word 'produce' in the summonses requires the Heftis to turn over the requested records and documents to the IRS, and not merely to present them to the IRS for its inspection." App. 99
 
 
 [13]
 In fact Magistrate Kingsland and all the Judges participating in the proceedings involved in these appeals deserve commendation for their patience. The case at bar is an excellent example of the evils of pro se practice
 
 
 [14]
 Fed. Cas. # 10,739 (Circuit Court E.D.Pa. (1849):
 The privilege which is asserted here is the privilege of the court, rather than of the defendant. It is founded in the necessities of the judicial administration, which would be often embarrassed, and sometimes interrupted, if the suitor might be vexed with process while attending upon the court for the protection of his rights, or the witness while attending to testify ... It can be exercised or not, in each particular case, as the purposes of substantial justice may seem to require.
 
 
 [15]
 To the same effect see In re Arthur Treacher's Franchisee Litigation, 92 F.R.D. 398, 404-06 (E.D.Pa.1981)
 
 
 [16]
 App. 93-94; Appellants' Brief, appendix