**Robert L. SCHULZ, Plaintiff–Appellant,**

v.

**INTERNAL REVENUE SERVICE and Anthony Roundtree, Defendants–Appellees.**

**Docket No. 04–0196.**

United States Court of Appeals, Second Circuit.

Petition for Rehearing: March 2, 2005.

Decided: June 29, 2005.

Robert L. Schulz, pro se, Queensbury, NY.

Frank P. Cihlar, Assistant United States Attorney, Tax Division, United States Department of Justice, Washington, DC, for Defendants–Appellees.

Before: FEINBERG, STRAUB, and RAGGI, Circuit Judges.

STRAUB, Circuit Judge.

The government has moved to amend our *per curiam* opinion, reported at *Schulz v. I.R.S.*, 395 F.3d 463 (2d Cir.2005) ("*Schulz I*"). In support of its motion, the government relies on arguments that it did not advance in the District Court or on the original appeal. In light of these new arguments, and because the proposed amendments, if accepted, would alter significantly our prior holding, we, at the government's suggestion, construe the motion to amend as a petition for panel rehearing. Having considered the arguments of the parties, we grant the petition to rehear for only the limited purpose and to the extent necessary to clarify our prior opinion and hold that: 1) absent an effort to seek enforcement through a federal court, IRS summonses "to appear, to testify, or to produce books, papers, records, or other data," 26 U.S.C. § 7604, issued "under the internal revenue laws," *id.*, apply no force to the target, and no punitive consequences can befall a summoned party who refuses, ignores, or otherwise does not comply with an IRS summons until that summons is backed by a federal court

order;[1] 2) if the IRS seeks enforcement of a summons through the federal courts, those subject to the proposed order must be given a reasonable opportunity to contest the government's request; 3) if a federal court grants a government request for an order of enforcement then any individual subject to that order must be given a reasonable opportunity to comply and cannot be held in contempt or subjected to indictment under 26 U.S.C. § 7210 for refusing to comply with the original, unenforced IRS summons, no matter the taxpayer's reasons or lack of reasons for so refusing.[2] Our prior opinion otherwise remains in effect to the extent that it is not inconsistent with this opinion. We grant the motion to extend time in which to file a petition for rehearing *en banc*.

## BACKGROUND

The facts underlying the original appeal are set forth in our prior opinion, *Schulz I*, 395 F.3d at 464. For purposes of completeness and clarity, however, we repeat that work here.

The IRS served Schulz with a series of summonses in May and June of 2003, ordering Schulz to appear and provide testimony and documents in connection with an investigation of Schulz by that agency. Rather than comply with the summonses,

Schulz filed a motion to quash in the United States District Court for the Northern District of New York. That motion was heard by Magistrate Judge David R. Homer and, on October 16, 2003, was dismissed for lack of subject matter jurisdiction. In his unpublished opinion the Magistrate Judge found that, because the IRS had not commenced a proceeding to enforce the summonses, no case or controversy existed, and if the IRS did attempt to compel compliance, the enforcement procedure described in § 7604 would provide Schulz with adequate opportunity to attack the summonses on their merits.

Schulz filed in the District Court an appeal from and objection to the Magistrate Judge's order. The District Court (David N. Hurd, *Judge*) denied those objections and dismissed the appeal on December 3, 2003, by an unpublished order. Schulz appealed to this Court. By our January 25, 2005, *per curiam* opinion, we affirmed. *See Schulz I*, 395 F.3d 463. The focus of that opinion was whether issuance of an IRS summons presents a case or controversy under Article III of the United States Constitution. *Id.* at 464. Relying on the Supreme Court's decisions in *Reisman v. Caplin*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964), and *Unit-*

---

**1.** In our prior *per curiam* opinion we held that "no consequence whatever can befall a taxpayer who refuses, ignores, or otherwise does not comply with an IRS summons until that summons is backed by a federal court order." 375 U.S. at 465, 84 S.Ct. 508. Contrary to the government's view that § 7604(b) allows a court to "punish disobedience *of an IRS summons*" without providing an intervening opportunity to comply with a court order of enforcement, we maintain that "no punitive consequences can befall a summoned party who refuses, ignores, or otherwise does not comply with an IRS summons until that summons is backed by a federal court order," but we recognize that 26 U.S.C. § 7604(b) allows courts to issue attachments, consistent

with the law of contempt, to ensure attendance at an enforcement hearing "[i]f the taxpayer has contumaciously refused to comply with the administrative summons and the Service fears he may flee the jurisdiction." *United States v. Powell*, 379 U.S. 48, 58 n. 18, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). While such an attachment is not, consistent with due process and the law of contempts, "punitive," it is nonetheless a consequence.

**2.** Our conclusions here and in *Schulz I* are consistent with *dicta* in our recent decision in *Hudson Valley Black Press v. IRS*, 409 F.3d 106, 110–111 (2d Cir. 2005).

ed States v. Bisceglia, 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975), and in view of our decisions in *Application of Colton*, 291 F.2d 487 (2d Cir.1961), and *United States v. Kulukundis*, 329 F.2d 197 (2d Cir.1964), we held that a taxpayer's motion to quash an IRS summons, in the absence of an effort by the agency to seek enforcement of that summons in a federal court, does not present an Article III case or controversy. *Schulz I*, 395 F.3d at 465. Because that holding entailed overruling, in part, our prior holding in *Colton*, we circulated *Schulz I* to all active members of the Court prior to filing. *Id.* at n. 1.

After *Schulz I* was issued, the government filed the present "motion to amend or, in the alternative, to extend time to file a petition for rehearing *en banc*," which the government also invites us to view as a petition for panel rehearing. The government's principal concerns are that we misunderstand the nature of the jurisdictional bar on motions to quash IRS summonses and "misapprehend[ ] the consequences that ensue from the issuance of an IRS administrative summons." As to the latter point, the government appears to argue alternatively, or in combination, that: 1) the government may use the federal courts to punish taxpayers who disobey an IRS summons even if the summons is never enforced by a court order; 2) if an IRS summons is enforced by a court order, the court may punish disobedience of the IRS summons before providing the taxpayer an opportunity to comply with the court's order; or 3) if an IRS summons is enforced by a court order, the court may punish disobedience of the IRS summons even if the taxpayer complies with the court's order. In our view, expressed in *Schulz I*, none of these proposals is consistent with the comprehensive tax-enforcement scheme in which 26 U.S.C. §§ 7210, 7604(a), and 7604(b) are situated, constitutional due process, or the relevant prece-

dents of this Court and the United States Supreme Court. Therefore, while we grant the petition for panel rehearing, we do so to clarify rather than to amend substantially *Schulz I*, which remains in force to the extent it is not inconsistent with this opinion.

## DISCUSSION

■ Because it was the focus of the parties, our discussion in *Schulz I* focused primarily on the doctrinal rules of jurisdiction that the Supreme Court has derived from the "Cases" and "Controversies" clauses of the United States Constitution, Article III, Section 2. *See Reisman*, 375 U.S. at 443, 84 S.Ct. 508 (dismissing petition to quash "for want of equity"). Underlying our analysis there was the equally venerable line of Supreme Court doctrine limiting the protections afforded to administrative action by sovereign immunity based on the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution. The "leading cases on this question are *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and *Oklahoma Operating Co. v. Love*, 252 U.S. 331, 40 S.Ct. 338, 64 L.Ed. 596 (1920)." *Reisman*, 375 U.S. at 446, 84 S.Ct. 508. In particular, our decision in *Schulz I* was informed by concerns, also stated in *Colton*, 291 F.2d at 489–90, and *Kulukundis*, 329 F.2d at 199, "that the penalties of contempt [or prosecution] risked by a refusal to comply with the summonses are so severe that the statutory procedure amounts to a denial of judicial review." *Reisman*, 375 U.S. at 446, 84 S.Ct. 508.

On its present motion, the government presses the claim that Congress has, in the statutory scheme that includes 26 U.S.C. §§ 7210 and 7604, exercised its right to immunize agents of the IRS from suits

seeking prospective relief from the enforcement of administrative summonses. That this is so was settled in *Reisman.* However, the privilege of that immunity comes with certain costs demanded by due process. Our holding in *Schulz I* took account of those costs while providing clear guidance to the government as to the constitutional limitations on its authority, and to taxpayers as to how their due process rights are protected by the statutory scheme. We take the opportunity provided by this petition to further explicate our view.

At issue on the present petition is whether 26 U.S.C. §§ 7210 and 7604 may be read to allow the imposition of penal consequences for failure to comply with an IRS summons or if levying of punishment for disobedience under those sections requires review by a federal court of the merits of a summons and, where the merits are upheld, a reasonable opportunity to comply with a court order of enforcement before punitive or coercive sanctions may be imposed. Addressing a view of 26 U.S.C. §§ 7210 and 7604 similar to that advanced by the government on this petition, Judge Friendly, writing for this Court, pointed out that:

> If the statutory scheme were like that for enforcement of subpoenas of such agencies as the Interstate Commerce Commission, 49 U.S.C. § 12, or the Civil Aeronautics Board, 49 U.S.C. § 1484, there would be merit in the Government's position that courts ought not intervene at so early a stage; since disobedience to a subpoena under those statutes has no penal consequences until a judge has ordered its enforcement, there is no occasion for any preliminary resort to the courts. Here, however, at least the criminal penalty of § 7210 is incurred by disobedience, and it is not altogether plain that a contempt citation under § 7604(b) may not be. Under

such circumstances the principle of *Ex parte Young,* 209 U.S. 123, 147, 28 S.Ct. 441, 52 L.Ed. 714 (1908) and *Oklahoma Operating Co. v. Love,* 252 U.S. 331, 336–337, 40 S.Ct. 338, 64 L.Ed. 596 (1920), comes into play; we see no reason why that principle should not be applicable to a summons, disobedience of which carries criminal penalties.... We are not unmindful of the potentialities of delay inherent in such an extra round— potentialities sufficiently serious without one, as illustrated, for example, by *Penfield Co. of Cal. v. S.E.C.,* 330 U.S. 585, 67 S.Ct. 918, 91 L.Ed. 1117 (1947); but the Government seems to be a victim of its own Draconianism. We hold the District Court had jurisdiction of the motion and thus reach the question of our appellate jurisdiction to review its denial.

*Colton,* 291 F.2d at 490.

■ Our view of the constitutional issues implicated in these sections of the tax enforcement scheme and the conflicts posed by the government's "Draconianism" is the same now as it was then. Reading 26 U.S.C. §§ 7210 and 7604 to allow the imposition of penal consequences for failure to comply with an IRS summons renders the sections unconstitutional unless the summoned taxpayer has an opportunity to seek judicial review of the summons *before* placing the taxpayer at risk of punishment. In *Colton* we held that taxpayers could seek such a review by filing a preliminary motion to quash an IRS summons before deciding whether to comply. That saving condition was excluded by the Supreme Court in *Reisman,* 375 U.S. at 445, 84 S.Ct. 508; *see also Kulukundis,* 329 F.2d at 199. In our view, that leaves only the remedy excluded in *Colton*—that "disobedience to [an IRS summons] has no penal consequences [under either 26 U.S.C. §§ 7210 or 7604] until a judge has ordered its enforcement," 291 F.2d at

490—to keep the scheme consistent with due process. *Reisman* advances this view. 375 U.S. at 450, 84 S.Ct. 508 ("[W] e remit the parties to the comprehensive procedure of the Code, which provides full opportunity for judicial review before any coercive sanctions may be imposed."); *see also Bisceglia*, 420 U.S. at 151, 95 S.Ct. 915 ("Congress has provided protection from arbitrary or capricious action by placing the federal courts between the Government and the person summoned [by the IRS].").  *Schulz I* provided our first opportunity to conform the law of this Circuit to that view.

Absent the protections afforded by *Colton*, the "Draconian" view of the statutory scheme advanced by the government in *Colton*, and on this petition, would render the scheme itself unconstitutional.  In *Schulz I* we found that *Reisman* and *Bisceglia* provide guidance on how 26 U.S.C. §§ 7210 and 7604 must be read so as to preserve agency immunity from preliminary suit while avoiding the *Ex parte Young* concerns that we identified in *Colton*.  In light of this guidance, we held that, before punishment for disobedience of an IRS summons may be levied, the agency must seek enforcement through a federal court in an adversarial proceeding through which the taxpayer can test the validity of the summons.  *See United States v. Euge*, 444 U.S. 707, 719, 100 S.Ct. 874, 63 L.Ed.2d 141 (1980) ("[T]he summoned party is entitled to challenge the issuance of the summons in an adversary

proceeding in federal court *prior to enforcement*, and may assert appropriate defenses." (emphasis added)); *Donaldson v. United States*, 400 U.S. 517, 525, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971) ("Thus the [IRS] summons is administratively issued but its enforcement is only by federal court authority in an adversary proceeding affording the opportunity for challenge and *complete protection* to the witness." (internal quotations marks omitted, emphasis added));[3] *see also United States v. LaSalle Nat. Bank*, 437 U.S. 298, 302, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978) (§ 7604(a) procedure commenced by petition followed by an adversarial hearing); *United States v. Edgerton*, 734 F.2d 913, 915–917 (2d Cir.1984) (describing complete and properly pursued § 7604(b) procedure leading to provision of a coercive contempt penalty); *United States v. Noall*, 587 F.2d 123, 124–26 (2d Cir.1978) (§ 7604(a) procedure commenced by petition followed by an order to show cause, submission of opposing affidavits, and argument).  We further held in *Schulz I* that, if the summons is not enforced, then no contempt sanction may be levied against the summoned party and no prosecution under 26 U.S.C. § 7210 may lie; and, in the alternative, if the summons is enforced by the court, then the summoned party must have a reasonable opportunity to comply with the court's order and only upon refusal to obey the court order may contempt sanctions be imposed or an indictment under 26 U.S.C. § 7210 pursued.[4]  *See Donaldson*, 400 U.S.

**3.** The holding in *Donaldson* that third parties do not have an absolute right to intervene in enforcement proceedings is not to the contrary—that holding was, of course, superceded by 26 § 7609.

**4.** We rejected this interpretation of 26 U.S.C. § 7210 in *Colton*, 291 F.2d at 489.  That holding was constitutionally tenable only in view of our determination that summoned witnesses would have an earlier chance to test

the merits of a summons in a motion to quash.  Informed by intervening decisions of this Court and the Supreme Court, we reversed our *Colton* holding in *Schulz I*.  Having considered the government's arguments on this petition, we see no reason to change our view again, particularly in view of the fact that § 7210 provides for prosecutions only against those *"duly summoned ... under* sections 6420(e)(2), 6421(g)(2), 6427(j)(2), 7602,

at 525, 91 S.Ct. 534; *Reisman,* 375 U.S. at 450, 84 S.Ct. 508. Any lesser protections would be constitutionally insufficient and, with respect to 26 U.S.C. § 7604(b), would also be inconsistent with the law of contempts. *See* Fed.R.Crim.P. Rule 42; *Bloom v. Illinois,* 391 U.S. 194, 201–208, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); *United States v. Rizzo,* 539 F.2d 458, 463–65 (5th Cir.1976).

■ The rule of due process upon which we relied in *Schulz I,* and upon which we rely now, can be stated thus: any legislative scheme that denies subjects an opportunity to seek judicial review of administrative orders except by refusing to comply, and so put themselves in immediate jeopardy of possible penalties "so heavy as to prohibit resort to that remedy," *Oklahoma Operating Co. v. Love,* 252 U.S. 331, 333, 40 S.Ct. 338, 64 L.Ed. 596 (1920), runs afoul of the due process requirements of the Fifth and Fourteenth Amendments. This is so even if "in the proceedings for contempt the validity of the original order may be assailed." *Id.* at 335, 40 S.Ct. 338; *see also Reisman,* 375 U.S. at 446, 84 S.Ct. 508; *Ex parte Young,* 209 U.S. 123, 147–48, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

According to the government's present view of 26 U.S.C. §§ 7210 and 7604, the agency may summon a taxpayer and the taxpayer must choose either to comply or, if not, put herself directly at jeopardy of sanction without an intervening opportunity to seek judicial review of the summons. In *Colton* we rejected that view as contrary to due process. The remedy we proposed there, consistent with *Ex parte Young,* was a prospective suit in the form of a motion to quash. The Supreme Court in *Reisman* rejected that solution and instead held that the agency has no power or authority to compel compliance with a summons and must pursue enforcement in an adversarial proceeding before a federal judge. *Reisman,* 375 U.S. at 445–46, 84 S.Ct. 508. The Court further held that "[i]n such a proceeding only a refusal to comply with an order of the district judge subjects the witness to contempt proceedings," *id.* at 446, 84 S.Ct. 508, and that attempts to quash IRS summonses are "subject to dismissal for want of equity," *id.* at 443, 84 S.Ct. 508. Addressing directly *Ex parte Young* issues, the Court recognized that prosecution under 26 U.S.C. § 7210 and attachment under 26 U.S.C. § 7604(b) may present sufficient threat to trigger due process concerns. *Id.* at 446–50. However, noting the lack of administrative enforcement and the limited applicability of both § 7210 and § 7604(b) to "default" or a "contumacious refusal to honor a summons," *id.* at 449, the Court held that "in any of these procedures ... the witness may challenge the summons on any appropriate ground," *id.* In light of these holdings, the Court concluded that the procedure for challenging IRS summonses "specified by Congress works no injustice and suffers no constitutional invalidity" because it "provides full opportunity for judicial review before any coercive sanctions may be imposed." *Id.* at 450.

In our view, this provides a reasonable, non-Draconian, solution to the problem we noted in *Colton* by requiring both judicial review of an IRS summons and an intervening opportunity to comply with a court order of enforcement prior to the imposition of coercive or punitive sanctions. *See Kulukundis,* 329 F.2d at 199. *Schulz I* made clear that view. Nothing in the government's petition inspires us to withdraw except insofar as *Schulz I* may be read to prohibit pre-hearing attachments of those summoned by the IRS who have wholly

7603, and 7604(b)." 26 U.S.C. § 7210 (emphasis added).

defaulted or contumaciously refused to comply in order to ensure their presence at a promptly held enforcement hearing. Such attachments are meant solely to ensure the presence of an obstinate taxpayer at an enforcement hearing. Because indefinitely detaining a taxpayer whose summons has yet to be enforced by a court would violate the taxpayer's due process rights, the enforcement hearing must be held as soon after the taxpayer's arrest as possible. *See* 26 U.S.C. § 7604(b) (allowing attachment "as for contempt," and, if appropriate after "a hearing of the case," issuance of orders "not inconsistent with the law for the punishment of contempts"); *United States v. Hefti,* 879 F.2d 311, 312 n. 2 (8th Cir.1989) ("Judicial enforcement of orders under 26 U.S.C. § 7602 is governed by 26 U.S.C. § 7604(b). Only a refusal to comply with an order of the District Court subjects the witness to contempt proceedings." (citing *Reisman* )); *see also United States v. Powell,* 379 U.S. 48, 58, n. 18, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964) (pointing out that summons enforcement "proceedings are instituted by filing a complaint, followed by answer and hearing. If the taxpayer has contumaciously refused to comply with the administrative summons *and* the Service fears he may flee the jurisdiction, *application* for the sanctions available under § 7604(b) might be made simultaneously with the filing of the complaint." (emphasis added)); *Reisman,* 375 U.S. at 446–50, 84 S.Ct. 508. Neither this opinion nor *Schulz I* prohibits the issuance of pre-hearing attachments consistent with due process and the law of contempts. *See* 26 U.S.C. § 7604(b).

## CONCLUSION

For the foregoing reasons the petition for rehearing is GRANTED for the limited purpose of providing clarification to *Schulz I* contained in this opinion. *Schulz I* shall remain in force to the extent that it is not inconsistent with this opinion. The motion to extend the time for filing of a petition for rehearing *en banc* is GRANTED. Either party may file such a motion within 45 days of the filing of this opinion.