Nicole Vento MOLLISON, VIFX, LLC, As Successor in Interest to DTDV, Nicole Vento, Gail Vento, Renee Vento, VI Derivatives, LLC, Richard Vento, Lana Vento, Richard & Lana Vento 2000 Dynasty Trust, Petitioners–Appellants,

v.

UNITED STATES of America, Respondent–Appellee.

Docket Nos. 06–1539–cv(L), 06–1542–cv(Con), 06–1545–cv(Con), 06–1550–cv(Con), 06–1551–cv(Con), 06–1553–cv(Con), 06–1554–cv(Con), 06–1555–cv(Con), 05–1557–cv(Con).

United States Court of Appeals, Second Circuit.

Argued: March 7, 2007.

Decided: March 16, 2007.

Joseph M. Erwin (Steven M. Nachman, on the brief), Dallas, TX, for Petitioners–Appellants.

Sarah E. Light, Assistant United States Attorney (Michael J. Garcia, United States Attorney, Southern District of New York, Sean H. Lane, Assistant United States Attorney, on the brief), New York, NY, for Respondent–Appellee.

Before WINTER, WALKER, and STRAUB, Circuit Judges.

## PER CURIAM.

Petitioners–Appellants, who consist of members of the Vento family and their associated entities, seek to quash a third-party summons issued by the Internal Revenue Service ("IRS") to Salomon Smith Barney, Inc. as part of an investigation into potential tax liabilities arising from the sale of stock worth approximately $180 million. In dismissing the petitions and enforcing the summons, the District Court for the Southern District of New York (Jed S. Rakoff, *Judge)* concluded, *inter alia,* that the purpose of the summons was "legitimate" under *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), even assuming that petitioners were bona fide U.S. Virgin Islands residents. We agree. We further agree that the information the summons targeted was relevant to the investigation and not already in the IRS's possession, and that the summons was procedurally proper. Finally, we conclude that issuing the summons does not violate the Ventos' due process rights.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The information that the IRS seeks concerns the sale of stock in a software company called Objective Systems Integrators, Inc. ("OSI"), which Richard Vento co-founded in the 1980s. In 2000, the Ventos and several of their related entities held large blocs of OSI stock. In October of that year, Richard and Lana Vento transferred a portion of their holdings—almost $90 million worth of OSI stock—to two of those entities, a pair of limited liability

companies in the United States called DTDV LLC and DTLV LLC.

Shortly thereafter, OSI filed a formal Plan of Merger with the Securities and Exchange Commission, pursuant to which Agilent Technologies, Inc. tendered an offer for all outstanding OSI shares. In January of 2001, the Ventos and their related entities sold their shares according to the tender. Salomon Smith Barney brokered the sales, which generated approximately $180 million in total gross income that eventually was distributed throughout several entities that the Ventos controlled.

Three aspects of the transaction and its surrounding circumstances caught the attention of the IRS. First, a pair of the Ventos' limited liability companies—Petitioners VI Derivatives LLC and VIFX LLC—reported almost all of this income on tax returns filed in 2001 with the United States Virgin Islands. Yet neither of these companies existed until seven months *after* the stock sale.

Second, the money reported by VI Derivatives and VIFX traveled a tortured path through entities controlled by the Ventos but never came to rest with the Ventos personally. Specifically, VI Derivatives reported $173 million of gross income and $149 million of net income, which it transferred to VIFX. In turn, VIFX parceled the $149 million among its various partners, including the aforementioned DTDV and DTLV, Petitioner Richard & Lana Vento Dynasty Trust, and the eponymous limited liability companies of Gail, Renee, and Nicole Vento. VIFX did not, however, pass any income to the Ventos personally, even though they were listed as its individual partners.

Third, during the tax year in which the stock sale occurred, the Ventos decided to move to the Virgin Islands. Prior to 2001, the Ventos, who are U.S. citizens, resided in Nevada and filed their individual tax returns in the United States. In July of 2001—roughly six months after the stock sale—Richard Vento purchased a residence in St. Thomas. The record does not establish whether or when the Ventos actually began living there, or for how long. In any event, the Ventos filed their 2001 individual tax returns with the Virgin Islands Bureau of Internal Revenue. On those tax returns, the Ventos claimed that they contributed their Nevada residence to a charitable support organization bearing their name, which sold the home shortly thereafter.

In light of these circumstances, the IRS commenced its investigation into whether the Ventos fully and properly reported their income for 2001. In general, the IRS is interested in whether the Ventos were bona fide residents of the Virgin Islands in 2001 or whether their claimed residency was merely a ruse to avoid filing U.S. income tax returns. Even if the Vento's Virgin Islands residency is bona fide, the IRS wishes to determine whether the Ventos' Virgin Islands tax returns fully reflect their individual incomes and those of their related entities, and if not, whether any residual income should have been reported in the United States. Finally, the IRS seeks to determine whether the Ventos properly attributed the income they did report, and in particular, whether Richard and Lana Vento properly assigned income from the sale of their OSI stock to the U.S. entities DTDV and DTLV.

In aid of its investigation, the IRS issued a summons to Salomon Smith Barney in New York. The summons, of which petitioners received notice, sought testimony and documents relating to the opening and maintenance of the Vento's accounts, the withholding of taxes, and the transfer and distribution of cash generated from OSI stock sales.

Petitioners attempted to quash the summons in the District Court, claiming that (1) the IRS lacked a legitimate purposes in issuing the summons because petitioners resided in the Virgin Islands and thus, pursuant to 26 U.S.C. § 932(c), were required to file only Virgin Islands tax returns; (2) the documents sought were not relevant to the question of petitioners' residency; (3) the IRS already had the information in its possession; (4) the IRS failed to follow proper procedures in issuing the summons because it violated the Tax Implementation Agreement between the United States and the Virgin Islands; and (5) the summons violated their due process rights. In response, the IRS counterclaimed to enforce the summons. In support of its counterclaim, the IRS submitted the declaration of Revenue Agent Robert Canale, in which he described the facts set forth above.

The District Court dismissed the petitions and enforced the summons. In particular, the District Court held that the IRS had a legitimate purpose in issuing the summons because the IRS was investigating whether the Ventos were bona fide Virgin Islands residents in 2001, and because even if they were, the IRS retains the authority to investigate the tax liabilities of Virgin Islands residents. The District Court summarily rejected the balance of petitioners' arguments and denied their motion for a stay pending appeal.

## II. DISCUSSION

■ We review the District Court's factual findings for clear error and its interpretation of the Internal Revenue Code (the "Code") *de novo. See Field v. United States,* 381 F.3d 109, 111 (2d Cir.2004); *United States v. Millman,* 822 F.2d 305, 309 (2d Cir.1987).

The Code authorizes and requires the IRS to "make the inquiries, determinations, and assessments of all taxes." 26 U.S.C. § 6201(a). The Code further authorizes the IRS to "examine *any* books, papers, records, or other data which *may* be relevant or material" to its investigations. 26 U.S.C. § 7602(a)(1) (emphases added). In connection with this authorization, the IRS may "summon ... any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax." 26 U.S.C. § 7602(a)(2).

■ As the statutory language establishes, the IRS's investigatory power "is quite broad." *PAA Mgmt. Ltd. v. United States,* 962 F.2d 212, 216 (2d Cir.1992). This authority, however, is not unbounded. The subject of an IRS investigation may petition to quash a third-party summons pursuant to 26 U.S.C. § 7609(b). A now-familiar scheme of shifting burdens, designed to ensure only the basic propriety of the investigation, applies to such petitions. First, the IRS must establish a prima facie case satisfying the criteria set forth in *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). Specifically, the IRS must show that (1) "a legitimate purpose exists for the investigation," (2) "the summons may be relevant to that purpose," (3) "the information sought is not already in the possession of the government," and (4) "the procedural and administrative steps required by the Code have been followed." *PAA Mgmt. Ltd.,* 962 F.2d at 215; *see also Powell,* 379 U.S. at 57–58, 85 S.Ct. 248.

■ Once the IRS establishes its prima facie case, "the burden shifts to the taxpayer to disprove one of the four *Powell* criteria, or to demonstrate that judicial enforcement would be an abuse of the court's process." *United States v. Beacon Fed. Savs. & Loan,* 718 F.2d 49, 52 (2d Cir.1983) (internal quotation marks omitted). "[T]he taxpayer's burden is a 'heavy'

one, which he must meet by 'disprov[ing] the actual existence of a valid civil tax determination or collection purpose by the [IRS].'" *United States v. White*, 853 F.2d 107, 111 (2d Cir.1988).

 Turning to the summons at issue here, the IRS made its preliminary showing by way of the Canale Declaration, which sets forth the facts recounted above. *In re McVane*, 44 F.3d 1127, 1136 (2d Cir.1995) ("An affidavit from a government official is sufficient to establish a prima facie showing that [the *Powell]* requirements have been met."). In response, petitioners base their central contention on 26 U.S.C. § 932(c), which provides that "bona fide" residents of the Virgin Islands "shall file [their] income tax return[s] ... with the Virgin Islands." Section 932(c)(4) further provides that when a Virgin Islands resident reports *all* his income on his Virgin Islands return and *fully* pays his tax liability, that amount shall be excluded from the calculation of his "tax liability to the United States." Based on these provisions, petitioners claim that the IRS investigation lacks a legitimate purpose because, as Virgin Islands residents, they were required to file tax returns with the Virgin Islands only. At bottom, petitioners claim that they reside outside the IRS's jurisdiction, and fall exclusively within the jurisdiction of the Virgin Islands Bureau of Internal Revenue.

We disagree with this contention on the merits. Even if petitioners are bona fide Virgin Islands residents, they may incur U.S. tax liability. As a result, the IRS may legitimately investigate whether that liability exists, and if so, to what extent.

In § 932, Congress provided for the "coordination of" income taxes between the United States and its possession, the Virgin Islands. As a general matter, U.S. citizens must file their tax returns with the IRS and pay their federal taxes to the United States. However, § 932(c)(4) excuses the U.S. tax liability of a Virgin Islands resident in a certain circumstance: when he has "report[ed] income from all sources" in his Virgin Islands tax return and "fully [paid] his tax liability." Conversely, when these conditions have *not* been met—that is, when a Virgin Islands resident has not fully reported his income on his Virgin Islands tax return *and* fully paid his taxes—then he is *not* excused from U.S. tax liability. In order to determine whether any such residual liability exists, the IRS must investigate the accuracy of the Virgin Islands tax return. Toward that end, Congress has explicitly authorized the IRS to enforce the Code "in any possession of the United States in the same manner and to the same extent as if such possession were a State." 26 U.S.C. § 7651(1). Accordingly, even bona fide Virgin Islands residents fall within the purview of the IRS.

Even more fundamentally, petitioners' challenge to the IRS's jurisdiction is immaterial. *United States v. Const. Prods. Research, Inc.*, 73 F.3d 464, 470 (2d Cir.1996) ("Moreover, at the subpoena enforcement stage, courts need not determine whether the subpoenaed party is within the agency's jurisdiction or covered by the statute it administers; rather the coverage determination should wait until an enforcement action is brought against the subpoenaed party."). In applying the "legitimate purpose" test, we are not concerned with whether any subsequent enforcement action is likely to be meritorious, jurisdictionally or otherwise. *White*, 853 F.2d at 116.

The reason for this approach is that an administrative summons is an important tool in the preliminary information-gathering process designed to determine *whether* a violation exists, not to actually prosecute the violation. "The purpose of the [sum-

mons] statutes is not to accuse, but to inquire." *United States v. Bisceglia*, 420 U.S. 141, 146, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975); *see also White*, 853 F.2d at 111 ("These proceedings generally occur at the early investigative stage of any tax inquiry . . . when no guilt or liability of the taxpayer has been established."). The broad language of the statutes evinces "a congressional policy choice *in favor of disclosure* of all information relevant to a legitimate IRS inquiry," *United States v. Arthur Young & Co.*, 465 U.S. 805, 816, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984), which is "essential" to the IRS's ability to ferret out potential Code violations in our system of self reporting, *Bisceglia*, 420 U.S. at 146, 95 S.Ct. 915. For these reasons, the Supreme Court has described the role of the administrative summons as akin "to [that of] the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Powell*, 379 U.S. at 57, 85 S.Ct. 248. Accordingly, in enforcing a summons the IRS need not "meet any standard of probable cause," *id.* at 54, 85 S.Ct. 248, and need not "litigate and prosecute appeals on the very subject which [it] desires to investigate," *id.* at 57, 85 S.Ct. 248.

Thus, the "legitimate purpose" test comprehends a question much narrower than the merits of any subsequent enforcement action, namely, whether the IRS is pursuing its investigation in good faith. *See Mc Vane*, 44 F.3d at 1135 (noting that the "court's role in a proceeding to enforce an administrative subpoena is 'extremely limited' "); *PAA Mgmt., Ltd.*, 962 F.2d at 216 (noting that the "examples of purposes that would be improper" are "somewhat extreme," such as "harassing the taxpayer, putting pressure on the taxpayer to settle a collateral dispute, and similar kinds of bad faith abuse"). In this case, petitioners have offered nothing to show that the IRS is pursuing its investigation in bad faith. Accordingly, we conclude that the summons was issued for the legitimate purpose of investigating petitioners' potential tax liabilities.

Petitioners remaining claims also fail. The information sought—account initiation documents, account statements, tax withholding forms, and documents reflecting the transfer of money between individuals and entities—clearly "may be" relevant to whether the Ventos fully and accurately reported and attributed the income generated by the stock sales that Salomon Smith Barney brokered. 26 U.S.C. § 7602(a)(1). Although the materials' relevance to the question of residency is less apparent, we cannot rule out the possibility. *See McVane*, 44 F.3d at 1135 ("We defer to the agency's appraisal of relevancy, which must be accepted so long as it is not obviously wrong." (internal quotation marks omitted)).

Further, petitioners have failed to establish that the IRS already possesses the information sought. It is true that the IRS possesses certain "statements," purportedly from Salomon Smith Barney, that were attached to VI Derivatives' Virgin Islands tax return. However, the IRS is seeking documents beyond what these statements purport to be. Moreover, because VI Derivatives submitted these statements, their authenticity and accuracy is questionable. Until the statements are verified, we cannot consider them duplicative of any of the information sought, much less all the information sought.

■ In addition, we conclude that the summons was procedurally proper. Petitioners urge that the summons was defective because the IRS failed to follow the Tax Implementation Agreement ("TIA") between the United States and the Virgin

Islands. However, a literal reading of *Powell* requires compliance with only the Code's procedures, "in particular, that the Secretary or his delegate, after investigation, has determined the further investigation to be necessary and has notified the taxpayer in writing to that effect." *Powell,* 379 U.S. at 58, 85 S.Ct. 248 (internal quotation marks omitted). There is no debate that the IRS has determined its investigation to be necessary or that petitioners received proper notice. Second, even assuming that *Powell* requires compliance with the TIA, and assuming further that petitioners have standing to demand such compliance, they have failed to even identify any TIA provision that applies in the case of a third-party summons issued by the IRS in the United States.

Petitioners further contend that the summons was procedurally improper because the IRS issued it in the absence of a proper delegation order. However, a delegation order in effect at the time of the summons' issuance expressly permits an agent, such as Canale, to issue a third-party summons where the agent's manager also signs the summons, as was done here. Delegation Order No. 4 Rev. 22, 1997 WL 33479254 (Aug. 18, 1997).

█ Finally, we reject petitioners' due process claim for failure to identify any property or liberty interest of which they are being deprived by the issuance of a third-party summons. As we have noted, because a summons may be ignored without consequence until it is judicially enforced, the mere issuance of a summons does not give rise to any due process concerns. *Schulz v. IRS,* 413 F.3d 297, 301–02 (2d Cir.2005); *United States v. Gilleran,* 992 F.2d 232, 233–34 (9th Cir.1993).

* Pursuant to Fed. R.App. P. 43(c)(2), current Attorney General Alberto R. Gonzales is sub-

## CONCLUSION

For the reasons set forth above, we AFFIRM the judgment of the District Court.