[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 1, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11029

_____

D. C. Docket No. 06-60501-CV-DLG

TIMOTHY J. ELMES,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,
through Internal Revenue Service,
through Kim Keelan, Revenue Agent,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 1, 2008)

Before TJOFLAT, MARCUS  and WILSON, Circuit Judges.

PER CURIAM:

At issue in this appeal is whether the United States District Court for the

Southern District of Florida properly enforced two summonses served on American Express and Northern Trust Bank, respectively, by the Internal Revenue Service ("IRS"). After thorough review, we affirm.

I.

In 2002, Timothy J. Elmes claimed to be a resident of the Virgin Islands and ceased filing his U.S. tax returns. On March 22, 2006, IRS Agent Jim Keelan issued summonses to the South Florida custodians of American Express and Northern Trust Bank requesting bank account and credit card statements, correspondence, and billing address information to determine whether Elmes was a resident of the United States during the years 2002 through 2004.

Elmes petitioned to quash the summonses, and the Government thereafter moved to dismiss his petition and to enforce the summonses. Along with that motion, the Government included an affidavit signed by Agent Keelan declaring that the summonses complied with the four factors laid out by the Supreme Court in United States v. Powell, 379 U.S. 48, 57-58 (1964). On January 26, 2007, the district court denied Elmes' petition and ordered the enforcement of both summonses. This timely appeal followed.

II.

"An order enforcing an IRS summons will not be reversed unless clearly

erroneous." United States v. Medlin, 986 F.2d 463, 466 (11th Cir. 1993).

Pursuant to 26 U.S.C. § 7602, "the Secretary of the Treasury, or the IRS as his designee, may examine any books, papers, records, or other data which may be relevant or material to . . . ascertaining the correctness of any return and may issue summonses to those in possession, custody, or care thereof to appear and produce them to the IRS." La Mura v. United States, 765 F.2d 974, 979 (11th Cir. 1985) (citation and internal quotation marks omitted).[1] The "IRS' power to investigate" under 26 U.S.C. § 7602 is "broad and expansive." Id. (citation and internal quotation marks omitted). "This authority, however, is not unbounded. The subject of an IRS investigation may petition to quash a third-party summons pursuant to 26

_____

[1] In pertinent part, 26 U.S.C. § 7602(a) provides:

> For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized --
> (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
> (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry[.]

U.S.C. § 7609(b)," and a "now-familiar scheme of shifting burdens, designed to ensure only the basic propriety of the investigation, applies to such petitions." Mollison v. United States, 481 F.3d 119, 122 (2d Cir. 2007) (per curiam).

First, the Government must establish a prima facie case for enforcement of the summons by satisfying each of the four factors laid out by the Supreme Court in Powell. Medlin, 986 F.2d at 466. Specifically, the Government must demonstrate "[1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the IRS' possession, [and 4] that the administrative steps required by the Code have been followed." Id. (citation and internal quotation marks omitted). In addition, the Government must show that no "Justice Department referral is in effect with respect to such person." 26 U.S.C. § 7602(d)(1). "The IRS may satisfy its minimal burden merely by presenting the sworn affidavit of the agent who issued the summons attesting to these facts." Medlin, 986 F.2d at 466 (citation and internal quotation marks omitted). "Thereafter, the burden shifts to the party contesting the summons to disprove one of the four elements of the government's prima facie showing or convince the court that enforcement of the summons would constitute an abuse of the court's process." La Mura, 765 F.2d at 979-80. "The taxpayer's burden is a heavy one,

4

which he must meet by disproving the actual existence of a valid civil tax determination or collection purpose by the IRS." Mollison, 481 F.3d at 123 (citation and internal quotation marks omitted).

Here, Agent Keelan's affidavit establishes the requisite elements for enforcement of the summonses. First, Keelan stated that he was conducting an investigation to determine Elmes' tax liabilities for the years 2002 through 2004, a purpose expressly authorized by Section 7602. See 26 U.S.C. § 7602(a) ("For the purpose of . . . determining the liability of any person for any internal revenue tax[.]"). Second, Keelan declared that he expected the records requested by the summonses to reveal information necessary to a determination of Elmes' tax liability by providing insight into Elmes' residency. Third, Keelan confirmed that, as of the date of the investigation, the IRS was not already in possession of the summoned information. Fourth, Keelan described how the summonses complied with the Code's procedures. Lastly, Keelan declared that no "Justice Department referral was in effect" with respect to Elmes. 26 U.S.C. § 7602(d).

The burden therefore shifts to Elmes either "to disprove one of the four elements of the government's prima facie showing or convince the court that enforcement of the summons would constitute an abuse of the court's process." La Mura, 765 F.2d at 979-80. Elmes does not dispute the Government's assertion that

5

no referral to the Department of Justice has been made, nor does he argue that enforcement of the summonses would constitute an abuse of the court's process. Instead, he alleges that he is a bona fide resident of the Virgin Islands, and that, for reasons flowing from this status, the Government has failed to satisfy three of the four Powell factors.[2] We disagree.

Elmes contends, first, that the Government's investigation was not conducted for a legitimate purpose. Specifically, Elmes argues that, because he is a bona fide resident of the Virgin Islands, the United States has no authority either to tax him or to investigate the possibility of taxing him. But a motion to enforce a summons does not require us to determine whether Elmes is or is not a resident of the Virgin Islands. The question we must address, rather, is whether an investigation into Elmes' residency -- and, therefore, his taxability -- is a legitimate purpose of the summons power. The plain language of Section 7602 indicates that it is. See 26 U.S.C. § 7602(a) . Moreover, even assuming that Elmes is a resident of the Virgin Islands, the IRS would still have the authority to investigate his tax liabilities because the IRS is allowed to tax residents of the Virgin Islands to the extent they have not paid their Virgin Islands taxes in full. See 26 U.S.C. § 932(c)(4); see also Mollison, 481 F.3d at 123. Accordingly, Elmes has not met his

---

[2] Elmes does not argue that the IRS was already in possession of the requested information when it issued the summonses – the third Powell factor.

"heavy" burden of refuting the Government's prima facie showing that the summonses were issued for a "legitimate purpose."

Elmes next argues that the information sought was irrelevant to the Government's investigation. The Internal Revenue Code authorizes the Government to examine "any books, papers, records, or other data which may be relevant or material" to its inquiry. 26 U.S.C. § 7602(a)(1). "The government's burden of showing relevance in this context is slight. If the information sought by an IRS summons might throw light upon the correctness of the taxpayer's return, then it is deemed to be relevant." La Mura, 765 F.2d at 981 (internal quotation marks omitted).

We agree with the Government that the bank records and financial statements it seeks from American Express and Northern Trust Bank "might throw light upon" the question of Elmes' residency and, therefore, his tax liabilities. For example, Elmes' financial records may demonstrate that he conducts all, or a great majority of, his banking in Florida, rather than in the Virgin Islands. Similarly, his credit card statements may highlight the restaurants he frequents, the dry cleaners he uses, and a host of other transactions relevant to where he actually resides. Accordingly, Elmes has not met his "heavy" burden of refuting the Government's prima facie showing that the summonses were relevant to a determination of his

7

residency.

Lastly, Elmes cites four cases -- <u>United States v. Stuart</u>, 489 U.S. 353 (1989), <u>Barquero v. United States</u>, 18 F.3d 1311 (5th Cir. 1994), <u>Mazurek v. United States</u>, 271 F.3d 226 (5th Cir. 2001), and <u>Lidas Inc. v. United States</u>, 238 F.3d 1076 (9th Cir. 2001) -- for the proposition that the IRS must comply with the procedures set forth in the Tax Implementation Agreement ("TIA") between the United States and the Virgin Islands before issuing a summons regarding a resident of the Virgin Islands.[3] But these cases all involve summonses to American institutions issued by the IRS at the request of foreign treaty partners and pursuant to foreign investigations. It is certainly the case, as Elmes suggests, that when the taxing authorities of Canada, Mexico, France, or the Virgin Islands seek financial information from an American entity -- as was the case in <u>Stuart</u>, <u>Barquero</u>, <u>Mazurek</u> and <u>Lidas</u>, respectively -- they should submit their requests to the IRS, as provided in the various tax agreements and treaties between those countries and the United States. But where, as here, the IRS summons an American bank pursuant to its own investigation, the Government need only follow the Code's procedures. <u>See</u> <u>Mollison</u>, 481 F.3d at 125 (quoting <u>Powell</u>, 379 U.S. at 58) ("[A] literal reading of <u>Powell</u> requires compliance with only the Code's procedures, 'in

---

[3] The TIA was signed by the Secretary of the Treasury and a representative of the Virgin Islands on February 24, 1987.

particular, that the Secretary or his delegate, after investigation, has determined the further investigation to be necessary and has notified the taxpayer in writing to that effect.'").

Elmes concedes that he received proper notice, and the Government has said it needs the summoned information for the purpose of determining Elmes' tax liabilities. See Powell, 379 U.S. at 53-54 ("If, in order to determine the existence or nonexistence of fraud in the taxpayer's returns, information in the taxpayer's records is needed which is not already in the Commissioner's possession, we think the examination is not 'unnecessary' within the meaning of § 7605(b)."). Therefore, Elmes has failed to demonstrate that the summonses were procedurally improper.[4]

**AFFIRMED**.

---

[4] Elmes argues, also, that Agent Keelan, who issued the summonses, was not the Secretary's authorized "delegate." But Internal Revenue Agents may issue summonses to third-party witnesses where "the issuing officer's manager, or any supervisory official above that level, has authorized the issuance of the summons in advance (evidenced by the supervisor's signature on the summons)[.]" IRS Delegation Order No. 4 Rev. 22, 1997 WL 33479254 (1997). Here, both summonses bear the signature of Agent Keelan's Group Manager, Larry Harris.