06-4667-cv
Adamowicz v. United States of America

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: May 9, 2008)                                    Decided: July 9, 2008)

Docket Nos. 06-4667-cv, 07-4723-cv

_____

Michael Adamowicz, Elizabeth Fraser, individually and as Executors of the
Estate of Mary Adamowicz, Deceased,

*Petitioners-Appellants*,

*-v.-*

United States of America,

*Respondent-Appellee.*

_____

BEFORE:  HALL, LIVINGSTON, and GIBSON,* *Circuit Judges.*

_____

Petitioners-Appellants Michael Adamowicz and Elizabeth Fraser appeal from the

decisions of the United States District Court for the Eastern District of New York (Wexler, *J.*)

denying their petitions to quash four different third-party summonses and enforcing two other

summonses issued by the Internal Revenue Service ("IRS") as part of its ongoing investigation

into the estate and gift tax liability of their mother's estate.  We conclude that appellants have not

met their burden of proving bad faith and improper purpose, and therefore affirm the decisions of

the district court.  In reaching this conclusion, we hold that whether the government's violation

of the Internal Revenue Code or an IRS regulation in connection with the issuance of a summons

---

*The Honorable John R. Gibson, United States Circuit Judge for the Court of Appeals for
the Eighth Circuit, sitting by designation.

1

affects the enforceability of that summons depends upon the totality of the circumstances, including the seriousness of the infringement, the harm or prejudice, if any, caused thereby, and the government's good faith.

—————————————

FREDERICK M. SEMBLER, Law Office of Frederick M. Sembler, PLLC, New York, NY, *for Appellants*.

KENNETH W. ROSENBERG (Eileen J. O'Connor & Nathan J. Hochman, Assistant Attorneys General, Andrea R. Tebbets, *on the brief*, Roslynn R. Mauskopf & Benton J. Campbell, United States Attorneys, *of counsel*), Tax Division, U.S. Department of Justice, Washington, DC, *for Appellee*.

—————————————

PER CURIAM:

Petitioners-Appellants Michael Adamowicz and Elizabeth Fraser appeal from the decisions of the United States District Court for the Eastern District of New York (Wexler, *J.*) denying their petitions to quash four different third-party summonses and enforcing two other summonses issued by the Internal Revenue Service ("IRS") as part of its ongoing investigation into the estate and gift tax liability of their mother's estate.[1]  Because we conclude that appellants have not met their burden of proof to show bad faith and improper purpose, and because we decide that technical violations occurring in the course of a tax investigation do not warrant quashing a summons absent bad faith, harm, or prejudice, we affirm the decisions of the district court.

—————————————

[1] These cases have been consolidated for argument.  Docket No. 06-4667-cv is an appeal from the district court's denial of a petition to quash three third-party summonses issued to Michael Adamowicz, Elizabeth Fraser, and Roslyn Savings Bank and enforcement of two summonses issued to Adamowicz and Fraser in their capacities as executors of Mary Adamowicz's estate.  Docket No. 07-4723-cv is an appeal from the district court's denial of a petition to quash a third-party summons issued to Marie Zere.  Because the cases involve the same parties and the same underlying facts, and because they rely upon the same law for resolution, we consolidate them for decision.

## BACKGROUND

### I. The Adamowicz, Fraser, and Roslyn Summonses

In July 2005, IRS Estate Tax Attorney Susan Leboff issued three third-party summonses in her investigation of the estate and gift tax liability of Mary Adamowicz. Petitioners-appellants Michael Adamowicz and Elizabeth Fraser are the decedent's children and also the executors of her estate. The three summonses were issued to Michael Adamowicz as an individual, Elizabeth Fraser as an individual, and Roslyn Savings Bank. The first two summonses requested that Adamowicz and Fraser appear on September 8, 2005 and produce a number of documents that the IRS claimed would be relevant in determining whether the decedent had either directly, or through her closely-held companies, made gratuitous transfers to family members before her death that would be subject to estate and gift tax liability. The summons to Roslyn Savings Bank requested its appearance on July 29, 2005 and asked it to produce a more discrete set of documents.

Adamowicz and Fraser, in their capacity as executors of the estate, moved to quash all three third-party summonses on August 11, 2005, asserting, inter alia, that the summonses were overbroad and were issued for an improper purpose. The government moved to dismiss that petition and also sought an order compelling compliance with the summonses, attaching a declaration from IRS Attorney Leboff to support its motion.

Leboff issued two additional summonses to Adamowicz and Fraser in their capacities as executors of the estate, requesting that they appear on September 8, 2005, and that they produce a number of documents. Adamowicz and Fraser appeared at the IRS on September 8, 2005, but they did not provide any documents responsive to the summonses and refused to answer questions. The government filed a petition on March 9, 2006 to enforce these two summonses.

3

On September 7, 2006, the district court denied Adamowicz's and Fraser's petition to quash the three third-party summonses and ordered that all five summonses be enforced.[2] Citing *United States v. Powell*, 379 U.S. 48 (1964), the district court explained that the four criteria for determining whether a summons is to be enforced had been met. It relied on Leboff's declaration to find that (1) the summonses were issued for the legitimate purpose of determining the proper estate and gift tax liability of Mary Adamowicz; (2) the information sought was relevant to that purpose; (3) the information sought was not already in the possession of the government; and (4) all administrative steps required by the Internal Revenue Code ("IRC"), 26 U.S.C. §§ 1-9834, had been followed. Thus, it found that the government had established a prima facie showing under *Powell*, and that Adamowicz's and Fraser's submissions "[did] little, if anything, to counter the Leboff Declaration or support any claim of improper purpose."

**II. The Zere Summons**

In June 2006, as part of the same investigation, Leboff issued a third-party summons to Marie Zere, President of Zere Real Estate Services, Inc. The summons requested that Zere appear on August 7, 2006, and that she produce (1) all documents created since January 1, 1997 pertaining to a lawsuit filed by Zere Real Estate Services against Adamag Realty Corp.; (2) all documents created since January 1, 1997 relating to the relationship between Paul Aniboli and Mary Adamowicz, Michael Adamowicz, Elizabeth Fraser, and Adamag Realty Corp.; and (3) all documents created since January 1, 1997 evidencing a donative intent by Mary Adamowicz to Michael Adamowicz and Elizabeth Fraser.

---

[2] The five included the three third-party summonses issued to Adamowicz as an individual, Fraser as an individual, and Roslyn Savings Bank, and the two summonses issued to Adamowicz and Fraser in their capacities as executors of the estate.

Adamowicz and Fraser filed a petition to quash the summons, asserting that the summons was overly broad and that it was served for the improper purpose of harassing and intimidating them. In their petition, they asserted many of the same allegations of improper purpose that they had made in their petition to quash the three earlier third-party summonses. The government moved to dismiss the petition and to order compliance with the summons, and again submitted a supporting declaration from Leboff. In her declaration, Leboff explained that Mary Adamowicz had owned a 52% interest in Adamag and that Aniboli and the executors had participated in the sale of property owned by Adamag. Her declaration continued: "The documents sought in the Zere summons are necessary to aid in the determination for estate and gift tax purposes [of] the value of the Adamag property and the character of the transfer of the property from Adamag to the company controlled by Aniboli and decedent's children; that is, whether that transfer should be construed to be in some part a gift from the decedent to her children." As to postmortem records requested,[3] Leboff explained that in her experience as an examiner, "it is almost always necessary to review postmortem records to arrive at the correct determination of the estate tax," because property at issue may have been transferred shortly after a decedent's death. Such transfers, Leboff declared, would "shed light on the amount and nature of any gratuitous transfer that may have occurred when the decedent transferred these properties to her children in the first instance."

On September 28, 2007, the district court denied the petition to quash the Zere summons and ordered that it be enforced. The district court relied upon Leboff's declaration to find that the government had met its burden of establishing that the summons should be enforced under

_____

[3] Mary Adamowicz died in 2002, but the IRS requested documents up to 2006 in the Zere Summons.

*Powell*. The district court also stated that Adamowicz's and Fraser's submissions did not counter the Leboff Declaration nor support their claim of improper purpose.

Adamowicz and Fraser appeal from the district court's decisions in both cases.

## DISCUSSION

### I. Standard of Review

We review the district court's factual findings for clear error and its interpretation of the Internal Revenue Code de novo. *Mollison v. United States*, 481 F.3d 119, 122 (2d Cir. 2007).

### II. Applicable Law

The Supreme Court's decision in *United States v. Powell*, 379 U.S. 48 (1964), sets forth the standard by which the IRS can obtain enforcement of a tax summons. The IRS must make a prima facie showing that: (1) "the investigation will be conducted pursuant to a legitimate purpose," (2) "the inquiry may be relevant to the purpose," (3) "the information sought is not already within the Commissioner's possession," and (4) "the administrative steps required by the Code have been followed." *Id.* at 57-58. This requirement is "designed to ensure only the basic propriety of the investigation" because, "[a]s the statutory language establishes, the IRS's investigatory power is quite broad." *Mollison*, 481 F.3d at 122 (internal quotation marks omitted). Once the IRS has established its prima facie case, "the burden shifts to the taxpayer to disprove one of the four *Powell* criteria, or to demonstrate that judicial enforcement would be an abuse of the court's process." *Id.* (internal quotation marks omitted). The taxpayer bears a "heavy" burden in this regard, because he or she must disprove "the actual existence of a valid civil tax determination or collection purpose by the IRS." *Id.* at 122-23 (internal quotation marks omitted). An abuse of the court's process occurs "if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58.

6

### III. Prima Facie Showing Under *Powell*

The district court properly found that the IRS had made a prima facie showing that the summonses should be enforced. Although it relied solely upon Leboff's declarations in both cases, an affidavit from the IRS is sufficient to establish the prima facie elements under *Powell*. *See Mollison*, 481 F.3d at 123 (stating that "the IRS made its preliminary showing by way of the Canale Declaration, which sets forth the facts recounted above" and citing *In re McVane*, 44 F.3d 1127, 1136 (2d Cir. 1995), for the proposition that an affidavit from a government official is sufficient to establish a *Powell* prima facie showing); *United States v. White*, 853 F.2d 107, 111-12 (2d Cir. 1988) (citing cases holding that the government's burden to establish the *Powell* requirements is minimal and that it may be met by way of a government agent affidavit, and later concluding that the government had made such a prima facie showing based on an IRS agent's affidavit). Based on Leboff's declarations, it is clear that: (1) the summonses were issued for the legitimate purpose of determining the tax liability of Mary Adamowicz's estate; (2) the information sought may be relevant to that purpose; (3) the summonses did not seek information already in the government's possession; and (4) the IRS followed the proper administrative steps.

### IV. Burden Shifted To Petitioners-Appellants

Adamowicz and Fraser assert five different arguments to support their contention that the summonses should be quashed: (1) the summonses are overly broad; (2) the information sought by the summonses is not relevant; (3) the summonses seek documents already in the possession of the IRS; (4) the summonses were issued in bad faith and for an improper purpose; and (5) the IRS failed to follow proper administrative procedures. The district court found, and we agree, that appellants have failed to meet their heavy burden to disprove one of the *Powell* criteria or to show that enforcement of the summonses would be an abuse of the court's process because the summonses were issued in bad faith or for an improper purpose. *See Mollison*, 481 F.3d at 122-23; *Powell*, 379 U.S. at 58.

7

## A. The *Powell* Criteria

Appellants' first three arguments attempt to disprove the *Powell* criteria, namely, that the inquiry is relevant to the legitimate tax investigation purpose and that the summonses do not seek information already in the possession of the government. *See Powell*, 379 U.S. at 57-58. For the reasons discussed below, appellants have failed to disprove any of the *Powell* criteria.

First, appellants argue that the summonses are overly broad, which makes compliance unreasonable and in some cases impossible. They rely on IRC § 7603(a), which requires that a tax summons describe the production sought "with reasonable certainty." Other courts have stated that "[a] summons will be deemed unreasonable and unenforceable if it is overbroad and disproportionate to the end sought." *United States v. Theodore*, 479 F.2d 749, 754 (4th Cir. 1973). We have said, in the context of enforcing IRS summonses, that "the Government may not exercise its investigative and inquisitorial power without limit—the examination is unreasonable and impermissible if it is overbroad, out of proportion to the end sought, or if it is so unrelated to the matter properly under inquiry as to exceed the investigatory power." *United States v. Harrington*, 388 F.2d 520, 523 (2d Cir. 1968) (citations and internal quotation marks omitted). Other Circuits have explained that: "An IRS summons is overbroad if it does not advise the summoned party what is required of him with sufficient specificity to permit him to respond adequately to the summons." *United States v. Medlin*, 986 F.2d 463, 467 (11th Cir. 1993) (internal quotation marks omitted). The requirement that a summons not be overbroad is rooted in the Fourth Amendment protection against unreasonable searches and seizures. *See United States v. Judicial Watch, Inc.*, 371 F.3d 824, 833 (D.C. Cir. 2004) (explaining that a summons is not overbroad for Fourth Amendment purposes "if the inquiry is within the authority of the agency, the demand is not too indefinite, and the information sought is reasonably relevant" (internal quotation marks and alteration omitted)). These cases show that claims of summonses being overbroad generally do not avail, except in limited circumstances. *See, e.g., Theodore*, 479

8

F.2d at 755 (concluding that IRS summons to tax preparer for all returns and work records relating to his clients over three years, which would amount to 1,500 tax returns, was overly broad).

Appellants here have not shown that the summonses at issue present anything approaching such extreme circumstances, and thus there is no support for their claim that the summonses are overbroad. The Adamowicz and Fraser summonses are specific about what information and records are being sought. Although they do request many different documents generated over long spans of time, on their face the requests are not "disproportionate to the end sought." *Theodore*, 479 F.2d at 754. Moreover, they sufficiently advise the summoned parties what is required to be produced and permit the parties to respond adequately. *See Medlin*, 986 F.2d at 467. The summonses request, in many cases, "all documents" created in a specific time frame: (1) concerning business between the executors and other companies and individuals; (2) concerning agreements the executors or the decedent had with banks and other lenders; (3) appraisals of property owned by the decedent or companies in which she had an interest; and (4) transfers by the decedent to her family or companies in which her family had an interest. The summonses also request documents from specific transactions, namely, (1) documents related to land transactions between Sayville Development Group and the Adamag Corporation; (2) documents related to payments made by the decedent (including interest or principal paid on notes related to contracts between companies Adamag and Sayville); and (3) documents related to deposits of money into accounts held by Adamag Realty and Veterans Highway Group. Although, admittedly, the summonses do request a great deal of information and documents, that fact in and of itself does not render them overly broad. *See Judicial Watch, Inc.*, 371 F.3d at 832 ("That the records sought are extensive is not material so long as the records are relevant to the matters at issue in the audit." (internal quotation marks omitted)).

9

The Roslyn Bank and Zere Summonses are even more circumscribed in their breadth than those just discussed. In the Roslyn Bank Summons, the IRS specifically requests: (1) bank signature cards for the decedent, the executors, Adamag Corp., and other named entities; (2) corporate resolutions for the same named entities; and (3) loan applications, agreements, appraisals, and related records for those entities. The summons states with particularity which records are sought and for what years. Likewise, the Zere Summons requests: (1) all documents pertaining to a lawsuit between Zere Real Estate and Adamag Realty Corp.; (2) all documents evidencing the financial and legal relationship between Paul Aniboli, Mary Adamowicz, executors, and Adamag Realty Corp., including agreements to sell real property; and (3) all documents evidencing a donative intent by the decedent toward the executors. These requests are certainly specific enough for Marie Zere to know what is being requested of her. *See Medlin*, 986 F.2d at 467. Appellants, therefore, cannot show that these summonses are overbroad.

Appellants' second argument is that the summonses seek irrelevant information. We have said:

> The statutory language is "may be relevant or material." Congress acted advisedly in using the verb "may be" rather than "is," since the Commissioner cannot be certain that the documents are relevant or material until he sees them. This court has consistently held that the threshold the Commissioner must surmount is very low, namely, "whether the inspection sought 'might have thrown light upon' the correctness of the taxpayer's returns."

*United States v. Noall*, 587 F.2d 123, 125 (2d Cir. 1978) (quoting *Foster v. United States*, 265 F.2d 183, 187 (2d Cir. 1959)). Here, the district court, relying upon Leboff's declarations, found that the information requested "may be relevant" to the legitimate purpose advanced by the IRS. Based on a review of the summonses and Leboff's declarations, the district court's finding in this regard was not clearly erroneous, nor was its decision an abuse of discretion. *See EEOC v. Quad/Graphics, Inc.*, 63 F.3d 642, 645 (7th Cir. 1995) ("A finding by the district court that documents are reasonably relevant to a legitimate agency purpose cannot be overturned absent a

showing that the factual determinations on which it is based are clearly erroneous or that the ruling itself constitutes an abuse of discretion.").

The Adamowicz, Fraser, and Roslyn Bank Summonses all seek information related to the IRS's investigation of possible gratuitous transfers to family members by the decedent or by one of her closely-held companies. Although appellants challenge the IRS's request for postmortem records, Leboff explained, and the district court credited her explanation, that postmortem records are relevant to a determination of proper estate tax liability. JA 342] The entities involved in the request are all corporations in which some family members owned a significant share or are S-corporations to which the decedent had made weekly payments. We cannot say that the requested information will not be relevant to the investigation.

The Zere Summons also requests information to determine the estate and gift tax liability of the estate of Mary Adamowicz. Specifically, the information sought may help determine the value of the Adamag property and the character of the transfer of that property from Adamag to Aniboli's company and the decedent's children, for purposes of determining whether that transfer should be construed as a gift. Appellants have presented no viable argument as to why Leboff's statements regarding the possible relevance of the information sought by the Zere Summons should not have been credited by the district court.

Appellants' third argument is that the particular documents sought through the summonses are already in the possession of the IRS. They have offered no evidence, however, to support that assertion. Although there may be some redundancy between the documents sought and those already produced, that in itself does not require a finding that the summonses should be quashed. *See United States v. Linsteadt*, 724 F.2d 480, 483-84 (5th Cir. 1984) (explaining that "[t]he 'already possessed' exception to the enforcement of Internal Revenue summonses is narrowly construed" such that even where some information may be technically in the IRS's possession, if the bulk of the materials summoned is not demonstrably in the possession of the

11

IRS, the summons may be properly enforced (citations omitted)). Even assuming appellants have proven that some documents have already been produced, they have not shown that the bulk of the information requested in the summonses is already in the possession of the IRS.

## B. Bad Faith and Improper Purpose

Appellants assert that the summonses were issued by the IRS, and specifically by Leboff, in bad faith for the improper purpose of harassing and intimidating them. They describe a number of disputes that they have had with the IRS throughout the course of this audit, arguing that those disputes and the IRS's conduct, taken together, evidence an improper purpose. While appellants' allegations do indicate that there have been a number of disputes throughout the process of the audit, for the reasons that follow, the allegations do not support a finding of improper purpose.

*Powell* provides that a summons should not be enforced "if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58. The taxpayer has the burden of proof to show such an improper purpose, *id.*, and we have characterized that burden as a "heavy" one, *Mollison*, 481 F.3d at 122-23. We have said:

> Although mere conclusory allegations of wrongdoing unsupported by any evidence from which a court might draw an inference of abuse are insufficient to rebut the government's prima facie showing of a proper investigatory purpose, the taxpayer has met his burden if he alleges specific facts from which a court might *infer a possibility* of some wrongful conduct by the Government.

*United States v. Millman*, 765 F.2d 27, 29 (2d Cir. 1985) (per curiam) (internal quotation marks omitted) (emphasis in original).

Appellants cite two specific allegations that they claim provide evidence of improper purpose: (1) the IRS's breach of its agreement to discharge an estate tax lien on the decedent's property interest in Peconic, New York; and (2) Leboff's misconduct throughout the estate tax

audit. Although there were certainly disputes in the course of the tax investigation, the fact of those disputes does not suffice to prove improper purpose on the part of the IRS. Appellants' allegations of bad faith are, moreover, conclusory and are not supported by the evidence proffered. As to the Peconic property dispute, although there was a genuine disagreement between the IRS and appellants over the release of the lien on the Peconic property, there is no indication in the record that the IRS acted in bad faith in this matter. Appellants have failed to show how this event is tied to the summonses at issue beyond the fact that they are loosely all part of the same tax investigation. As to Leboff's alleged misconduct, the parts of the record to which appellants cite as support for their claims of misconduct evidence only a tax attorney attempting to do her job, faced with taxpayers who have been less than forthcoming throughout the process. The correspondence between appellants and Leboff reveals no bad faith on Leboff's part, nor does it support appellants' conclusory allegations that Leboff threatened them with insulting or defamatory comments.

The district court found that appellants' submissions did not support a claim of improper purpose. We agree that appellants have failed to meet their heavy burden to show that enforcement of the summonses would be an abuse of the court's process on the basis that the summonses were issued in bad faith or for an improper purpose. *See Mollison*, 481 F.3d at 122-23; *Powell*, 379 U.S. at 58.

As a final note, appellants argue that they should have been granted an evidentiary hearing and limited discovery on the question of whether the IRS issued the summonses in bad faith. This Court has said that a taxpayer must make a "substantial preliminary showing" of improper purpose to warrant an evidentiary hearing. *Millman*, 765 F.2d at 29 (quoting *United States v. Tiffany Fine Arts, Inc.*, 718 F.2d 7, 14 (2d Cir. 1983), *aff'd*, 469 U.S. 310 (1985)). The district court's decision to grant or deny such a hearing is reviewed for abuse of discretion. *See Tiffany Fine Arts, Inc.*, 718 F.2d at 14. Appellants did not make a substantial showing of

13

improper purpose, and the district court was well within its discretion in denying them a hearing and limited discovery.

## C. IRS's Failure to Follow Administrative Procedures

Appellants assert that the IRS failed to follow proper administrative procedures, citing this as evidence of bad faith and as a basis for quashing the summonses. Specifically, they claim: (1) by sending a letter to the Appeals Office, Leboff violated IRS Revenue Procedure 2000-43, which prohibits ex parte communications between appeals officers and other IRS employees; (2) by obtaining a copy of an appraisal from another party, the IRS improperly examined records required to be produced under a summons in violation of IRC § 7609(d); (3) the IRS improperly used the audit to obtain information about tax liability of other individuals; and (4) the IRS failed to notify parties involved in the summonses in violation of IRC § 7609(a).[4] The government argues that these alleged errors do not warrant quashing the summonses at issue because appellants were not prejudiced by them in any way.

This Circuit has not previously decided whether violations of the sort alleged here require quashing related summonses issued in the course of a tax investigation. Other Circuits that have addressed this issue have held that violations of the IRC or tax regulations occurring in the course of a tax investigation do not necessarily require related tax summonses to be quashed. Those courts have looked at whether the taxpayer suffered harm or prejudice and whether the mistakes made by the IRS were in good faith. *See United States v. Bank of Moulton*, 614 F.2d 1063, 1066 (5th Cir. 1980) ("The correct approach for determining whether to enforce a

---

[4] Appellants also assert that the IRS mistakenly sought to enforce the summonses that were issued to Adamowicz and Fraser as executors, and thus, that the IRS never moved to enforce the summonses issued to the appellants as individuals. Although the government did mistakenly attach the wrong summonses to its motion to enforce the summonses, all parties were aware of which summonses were at issue. Indeed, appellants had attached copies of the proper summonses to their petition to quash. Despite this technical error by the government, appellants have not shown how they were harmed or prejudiced by it, and thus, it cannot rise to the level of a violation that would warrant quashing the summonses.

summons requires the court to evaluate the seriousness of the violation under all the circumstances, including the government's good faith and the degree of harm imposed by the unlawful conduct."); *see also Robert v. United States*, 364 F.3d 988, 996-97 (8th Cir. 2004) (setting forth that Circuit's rule that "the enforceability of a summons that the IRS issued through a violation of a law or rule depends upon all of the circumstances surrounding the summons, including the seriousness of the violation, the government's good faith, and the harm, if any, caused by the violation"). Employing similar reasoning, the First and Sixth Circuits have held that minor notice violations are not a basis for quashing a summons. *Cook v. United States*, 104 F.3d 886, 889 (6th Cir. 1997) (employing a harmless error type analysis to conclude that a one-day-late notice did not warrant quashing the summons); *Sylvestre v. United States*, 978 F.2d 25, 28 (1st Cir. 1992) (per curiam) (holding untimely notice was not a basis for quashing the summons where Sylvestre was not harmed by the late notice). Courts have "decline[d] to elevate form over substance and [have] reject[ed] the suggestion that every infringement of a requirement of the Internal Revenue Code absolutely precludes enforcement of an IRS summons." *Bank of Moulton*, 614 F.2d at 1066. We see no reason to vary from this general approach taken by our sister Circuits. Thus, we adopt the rule that whether the government's violation of the IRC or an IRS regulation in connection with the issuance of a summons affects the enforceability of that summons depends upon the totality of the circumstances, including the seriousness of the infringement, the harm or prejudice, if any, caused thereby, and the government's good faith.

Applying our holding to the appellants' allegations in this case, we conclude that appellants have not shown how they have been harmed or prejudiced by the alleged errors. As to the first claimed violation, appellants argue that communications between Leboff and the IRS's

Appeals Office in connection with the denial of the estate's section 6166 application[5] violated the rule against ex parte communications embodied in IRS regulations. The regulation, explained in IRS Revenue Procedure 2000-43, provides that ex parte communications between appeals officers and other IRS employees are prohibited during the appeals process to ensure an independent appellate review. Even if there were a violation here, appellants fail to show any nexus between that violation and the summonses at issue. Nor have they made any showing of how they have been harmed by that violation in the course of this tax investigation. The rule applies to protect the appellate review of the denial of the estate's 6166 application, which is the subject of a separate pending action in Tax Court, where presumably appellants may argue the direct effect, if any, of the alleged violation.

The second, third, and fourth challenges fall more squarely within the ambit of our holding. Appellants claim that the IRS improperly examined records under summons and that such examination violated IRC § 7609(d), which provides: "No examination of any records required to be produced under a summons as to which notice is required under subsection (a) may be made." Appellants allege that the IRS examined an appraisal that it obtained from another party and that the appraisal in question was requested under the summons issued to Roslyn Savings Bank. We need not reach the issue of whether there was a violation here, because even if there were, appellants provide no evidence from which we could conclude that the IRS acted in bad faith, nor do they allege any harm or prejudice that resulted from it. Appellants also allege that the IRS "admitted" that it is using the audit to obtain information concerning alleged liabilities of other taxpayers. Insofar as this argument goes to overbreadth and improper purpose, both have been addressed above. We also point out here that appellants have failed to show any harm or prejudice resulting from this alleged violation. Finally,

---

[5] IRC § 6166 allows for the deferral of estate tax payment when the estate consists largely of interest in closely-held businesses.

appellants assert that the IRS failed to abide by notice provisions in IRC § 7609(a) because the Service failed to notify appellants and all the parties identified in the summonses that the summonses had been issued. Yet again, appellants do not explain how, or even if, they have been prejudiced by this alleged notice violation. There is no question that they knew about the summonses soon enough to initiate a timely petition to quash them. If the notice provisions are intended to provide the summoned parties with ample time to protect their interests by initiating an action to quash the summonses, *see* IRC § 7609(a)(1), then surely that interest has not been impinged upon here.[6]

We have considered appellants' remaining arguments and find them to be without merit.

## CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court.

---

[6] We also note that in Leboff's declaration, she states that proper notice was served by certified mail to the involved parties. Appellants do not proffer any viable evidence to counter this declaration.