HIGHLAND CAPITAL
MANAGEMENT, L.P.,
Petitioner,

v.

UNITED STATES of America,
Respondent.

No. 14–mc–0174–P1 (CM).

United States District Court,
S.D. New York.

Signed Oct. 9, 2014.

Gabrielle Elise Farina, William Mayer Katz, Jr., Thompson & Knight, LLP, New York, NY, Mary A. McNulty, Thompson & Knight LLP, Dallas, TX, for Petitioner.

Shane Patrick Cargo, U.S. Attorney Office, New York, NY, for Respondent.

## MEMORANDUM DECISION AND ORDER ENFORCING SUMMONS

McMAHON, District Judge:

Petitioner Highland Capital Management, L.P. ("Highland" or "the taxpayer"), a Texas-based hedge fund, brings this proceeding to quash a third party summons served on Barclays Bank PLC ("Barclays") by the Internal Revenue Service ("IRS") in connection with an audit of Highland's 2008 tax return. The IRS cross-moves to enforce the subpoena.

The IRS more than meets its minimal burden of demonstrating, *prima facie*, that it issued the summons in good faith, and the taxpayer has failed to allege facts that plausibly raise an inference of improper motive. As a result, there is no need for any hearing. Highland's motion to quash the summons is DENIED and the IRS's cross-motion for enforcement is GRANTED.

## BACKGROUND FACTS RELATING TO THE SUMMONS

During an audit, the IRS questions losses claimed on Highland's 2008 tax return in connection with two transactions between it and Barclays. *See* Docket # 8, Decl. of Mary A. McNulty ("McNulty Decl.") at ¶ 5; Docket # 12, Decl. of Marcia T. Vanterpool ("Vanterpool Decl.") at ¶ 3. Highland and Barclays engaged in litigation relating to those two transactions and other transactions as well. *See* Docket # 2, Highland Mot. to Quash at 4. The lawsuit was settled on July 23, 2012; the settlement (pursuant to which Highland paid Barclays $220 million in a lump sum that related to all the challenged transactions, not just the two of interest to the IRS) was memorialized in a settlement agreement. *See* Vanterpool Decl. at ¶ 14.

In connection with the 2008 audit, the IRS repeatedly asked Highland to produce the settlement agreement. *Id.* at ¶¶ 4, 14; Docket # 13, Decl. of Kenneth D. Telchik ("Telchik Decl.") at ¶ 8; Docket # 2, Ex. C to Mot. to Quash, Information Document Request FP–55. Highland resisted, feinted, and tried to get the IRS to agree to accept certain representations instead of the settlement agreement—which, it claimed, it did not wish to disclose because a confidentiality provision in the agreement required Highland to alert Barclays before responding to the government's demand. *See* Docket # 2, Highland Mot. to Quash at 5. This Highland was reluctant to do, ostensibly because of acrimony that remained after the litigation. *Id.*

After repeated fruitless attempts to obtain the settlement agreement from Highland—both informal and via a formal demand for production no later than December 30, 2013 (with which Petitioner simply failed to comply)—the IRS decided to obtain the agreement from Barclays. *See* Telchik Decl. at ¶ 15; Docket

# 8, McNulty Decl. at ¶¶ 10, 16; Docket # 11, Decl. of Veronica L. Trevino ("Trevino Decl.") at ¶ 9; Vanterpool Decl. at ¶ 11. When the 2008 audit began, the IRS provided Highland with a copy of IRS Publication 1, which warns a taxpayer being audited that IRS agents "sometimes talk with [third parties] .... if we need information that [the taxpayer has] ... been unable to provide, or to verify information we have received ... Our need to contact other persons may continue as long as there is activity in your case." *See* Docket # 2, Ex. B to Highland Mot. to Quash, Notice of Beginning of Administrative Proceeding and IRS Publication 1 at 4. The publication goes on to advise the taxpayer under audit that, "if we do contact other persons, you have a right to request a list of those contacted." *Id.* It is uncontested that the Internal Revenue Code and IRS regulations permit this sort of contact, as long as the taxpayer has appropriate notice of it.

In addition to this general warning, it is undisputed that the IRS advised Highland at a January 16, 2014 meeting that the IRS would seek to obtain the withheld settlement agreement from Barclays unless Highland provided it. *See* Trevino Decl. at ¶¶ 10–11; Telchik Decl. at ¶ 17; McNulty Decl. at ¶¶ 12–14.

Having received nothing from Highland, on February 18, 2014, IRS Specialist Telchik informally asked Barclays to provide the IRS with a copy of the agreement. *See id.* When Barclays raised the issue of providing notice to Highland, the IRS offered to let Barclays give seven days' notice of turnover to Highland (as required by the settlement agreement's terms). Trevino Decl. at ¶ 11–12. Alternatively, the IRS indicated that it would issue a third party summons to Barclays, which would provide Highland with notice. *Id.*

Barclays elected the former course and ostensibly notified Highland that it planned to turn over the document to the IRS before doing so on March 10, 2014. Vanterpool Decl. at ¶¶ 13–14. However, it appears that neither Highland nor its counsel received notice that the document was being turned over until long after Barclays did so; counsel first learned that the document might be in IRS hands on May 27, 2014, and did not confirm that Barclays had in fact disclosed the settlement agreement until several weeks thereafter. *See* McNulty Decl. at ¶¶ 17–20.

Predictably, seeing the settlement agreement did not satisfy the IRS; the settlement payment was not allocated among the various transactions to which the settlement applied. Telchik Decl. at ¶ 22. This time, the IRS decided not to bother with Petitioner, which had repeatedly refused to provide it with the settlement agreement. Vanterpool Decl. at ¶ 16. Instead, it simply issued a third-party recordkeeper summons to Barclays on May 21, 2014, seeking documents "not already in IRS possession" that were "necessary to examine in order to properly audit the Federal tax liability of Highland for the 2008 taxable year." Telchik Decl. at ¶ 28; *see also* Vanterpool Decl. at ¶ 16. Highland, of course, was also served with a copy of this summons; indeed, it was receipt of IRS notice of this summons that alerted Highland to the fact that Barclays had already been asked to turn over the settlement agreement. McNulty Decl. at ¶¶ 17–20.

Petitioner seeks to quash this summons to Barclays.

## Other Alleged IRS Improprieties

In addition to the apparent failure to notify Highland about Barclays' turnover of the settlement agreement within the seven days required by the terms of the settlement agreement, the IRS allegedly

committed a series of additional improprieties relating to Highland's 2008 audit.

*First,* Case Manager Vanterpool opened an audit of Highland's 2009 return on January 21, 2014, just a week after the January 16 meeting and more than a year after agreeing not to open a 2009 audit until the 2008 audit was concluded. McNulty Decl. at ¶¶ 27–33. Highland admits that, after it complained that opening the 2009 audit violated the prior agreement, Vanterpool's supervisor closed it on March 19, 2014. *Id.* at ¶ 32.

*Second,* Vanterpool allegedly made an October 2012 request for documents in connection with the 2008 audit after agreeing not to do so. *Id.* at ¶¶ 24–26. Highland does not dispute that Vanterpool acknowledged her error and withdrew the request. *Id.;* Vanterpool Decl. at ¶ 22.

*Third,* the IRS allegedly failed to confer with Highland before issuing other draft requests for documents to Highland, in December 2013 and April 2014, in violation of its procedures. McNulty Decl. at ¶¶ 34–37. Highland has not pointed to any harm that resulted from these purported violations of internal procedures. *See id.*

*Fourth,* Highland alleges that the IRS improperly excluded it from a process known as a Chief Counsel Advice Request ("CCA request"), pursuant to which IRS field personnel can ask for legal advice from the IRS's national office in the form of a CCA memorandum. *See* IRS, Legal Advice Issued by Associate Chief Counsel, available at: http://www.irs.gov/uac/Legal-Advice-Issued-by-Associate-Chief-Counsel (last visited October 7, 2014). CCA memoranda do not establish adversarial positions in particular cases; they offer more widely applicable legal analysis clarifying statutes, codes, or policies, and do not apply the principles they announce to case-specific facts. *See* I.R.M. 33.1.3.1.1. In order to ask the national office to apply

legal principles to the facts of a particular case-including principles previously clarified through a CCA request—IRS field personnel may request what is known as "technical advice" in the form of a Technical Advice Memorandum ("TAM"). *See* I.R.M. 33.1.2.2.3.2.1. A particular audit may have both a TAM request and a CCA request proceeding simultaneously. *See* I.R.M. 33.1.2.2.3.2.2. The process for obtaining a TAM will normally include the taxpayer. *See* Rev. Proc. 2014–2 § 3. By contrast, a CCA request does not ordinarily involve the taxpayer. Trevino Decl. at ¶¶ 21–22.

Nonetheless, the IRS notified Highland that it was going to make a CCA request relating to the 2008 audit, and solicited any questions or concerns Highland might have concerning the initiation of the request. Vanterpool Decl. at ¶¶ 33, 35; Trevino Decl. at ¶ 18. The IRS then waited a week, did not hear from Highland, and submitted a CCA request on April 29, 2014. On April 30, 2014, Highland finally responded to the initial notification and offered no questions or concerns. *Id.*

Highland now complains that it was wrongly excluded from the process by which the CCA request was drafted because, on May 8, 2014, a week after declaring it had no concerns regarding the CCA, it changed position and announced that it wanted to be involved in drafting the CCA, but was not given that opportunity. *See* Trevino Decl. at ¶¶ 20–22. Highland's belated demand to participate in drafting the CCA request—an unusual thing for a taxpayer to do—was refused. *Id.* at ¶ 25. Highland was informed in late June that the national office had already issued the CCA memorandum. *Id.*

Highland has not identified any harm or prejudice that it suffered as a result of any of these alleged IRS "improprieties."

## DISCUSSION

### I. Standard for Quashing IRS Summonses

■ The IRS has "expansive" authority to issue information-seeking summonses in the service of its investigative function, reinforcing a tax system largely dependent on self-reporting. *United States v. Arthur Young & Co.*, 465 U.S. 805, 816, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984). While the IRS's investigative powers are extremely broad, a taxpayer may move to quash a summons on the basis that it has not been issued in good faith. *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). Because there is a clear legislative preference for summons enforcement, the relevant inquiry is "designed to ensure only the basic propriety of the investigation." *Mollison v. United States*, 481 F.3d 119, 122–23 (2d Cir.2007).

■ A burden-shifting inquiry governs a motion to quash. *Id.* Initially, the IRS bears a "minimal" burden to establish what have become known as the four *Powell* factors: (1) "that the investigation will be conducted pursuant to a legitimate purpose," (2) "that the inquiry may be relevant to the purpose," (3) "that the information sought is not already within the [IRS's] possession," and (4) "that the administrative steps required by the [Internal Revenue] Code have been followed." *Powell*, 379 U.S. at 57–58, 85 S.Ct. 248; *see also United States v. White*, 853 F.2d 107, 111 (2d Cir.1988).

■ Once the IRS establishes this minimal *prima facie* case, the burden shifts to the taxpayer either (1) to disprove the existence of a *Powell* factor, or (2) to prove some other "appropriate ground" to quash the summons, including, as alleged here, an improper purpose. *Reisman v. Caplin*, 375 U.S. 440, 449, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964). What constitutes an "improper purpose" is a pure question of law, *United States v. Clarke*, —— U.S. ——, 134 S.Ct. 2361, 2369, 189 L.Ed.2d 330 (2014), and includes harassment of a taxpayer or use of the summons power to pressure the taxpayer to settle a collateral dispute. *Adamowicz v. United States*, 531 F.3d 151, 156 (2d Cir.2008). The "improper purpose" must be that of the IRS as an institution. *See United States v. Millman*, 822 F.2d 305, 309 (2d Cir.1987); *see also United States v. LaSalle Nat. Bank*, 437 U.S. 298, 316, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). An IRS agent's personal intent matters only if it infects the investigation so thoroughly as to become the IRS's institutional posture. *Id.*

■ In this unfolding inquiry, the IRS's burden remains "minimal," while the taxpayer's is "heavy." *White*, 853 F.2d at 111. To prevail, the taxpayer must "disprove the actual existence of a valid civil tax determination or collection purpose by the Service." *Id.*, quoting *LaSalle Nat'l Bank*, 437 U.S. at 316, 98 S.Ct. 2357. Moreover, the taxpayer's evidence must be specific to the summons actually disputed; there is no "fruit of the poisonous tree" rule allowing a court to quash a summons that was issued in good faith on the ground that there was some prior impropriety. *See Charles v. United States*, 13–50937, 2014 WL 1464459 (E.D.Mich. Apr. 15, 2014).

■ To meet its ultimate burden, a taxpayer has a preliminary right to examine IRS officials about their reasons for issuing the disputed summons if it can "point[ ] to specific facts or circumstances plausibly raising an inference of bad faith." *Clarke*, 134 S.Ct. at 2365. The taxpayer's evidence must be "credible" and rise above "naked allegation" to raise a "plausible inference of improper motive" in order to

merit a hearing. *Id.* at 2369. Circumstantial evidence, however, can rise to the threshold level. *Id.*

## II. The IRS Has Made a Sufficient *Prima Facie* Showing Under *Powell* that Highland Has Not Rebutted.

The IRS has established its *prima facie* case by making the necessary showings that (1) the May 2014 summons was issued pursuant to a legitimate purpose; (2) the summons seeks information that "may be" relevant to that purpose and that (3) is not already in the IRS's possession; and (4) that it has followed the administrative steps required by the Internal Revenue Code.

■■■ First, while Highland ultimately disputes the propriety of the IRS's purpose in issuing the summons, the IRS's enforcement duties and prerogatives are so broad that it need "not depend on a case or controversy for power to get evidence," and instead "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Powell,* 379 U.S. at 57, 85 S.Ct. 248. Accordingly, the IRS may satisfy the first *Powell* requirement of showing a "legitimate purpose" for issuing the contested summons through an affidavit swearing the summons was issued to help determine tax liability. *See Adamowicz,* 531 F.3d at 156–57. It has done so. Telchik Decl. at ¶ 28.

■■■ Second, the information sought meets the extremely low relevance standard applicable to this third-party summons. The IRS satisfies the second *Powell* factor as long as it seeks information that "may be" relevant to the legitimate purpose advanced, meaning that the information "might ... throw[ ] light on" the IRS's legitimate inquiry. *United States v. Noall,* 587 F.2d 123, 125 (2d Cir.1978). Courts should defer to the IRS's assessment of relevancy as long as it is not "obviously wrong"—meaning that the material is relevant for *Powell* purposes so long as its capacity to illuminate the IRS's investigation cannot categorically be "rule[d] out." *Mollison,* 481 F.3d at 124. The IRS has assessed the materials sought as relevant and "necessary" to its investigation, *see* Telchik Decl. at ¶ 28, and the Court sees no reason to disturb that finding. While Highland complains that some responsive material formally relates to transactions other than the ones under investigation, and some even to transactions in which Highland technically is not a party, it is apparent, based on its review of the settlement agreement, that the IRS is investigating whether Highland has engaged in a shell game to seek a tax advantage. The Court can hardly "rule out" the possibility that the materials sought are relevant to determining Highland's tax liability.

There is no dispute about the third *Powell* factor: the information is not already in the IRS's possession.

■■■ Ultimately, Highland challenges the summons on the ground that the IRS ran afoul of the fourth *Powell* factor by failing to follow the administrative steps required by the Internal Revenue Code before issuing the subpoena. Specifically, Petitioner asserts that the IRS failed to provide it with adequate notice that it was contacting Barclays, as required by 26 U.S.C. § 7602(c)(1), which provides:

> An officer or employee of the Internal Revenue Service may not contact any person other than the taxpayer with respect to the determination or collection of the tax liability of such taxpayer without providing reasonable notice in advance to the taxpayer that contacts with persons other than the taxpayer may be made.

Highland's argument fails, for several reasons.

First, Highland admittedly received Publication 1 at the outset of the audit back in 2010. As a result, Highland was on notice that the IRS could contact third parties to obtain documents it could not get from Highland itself.

Highland asserts that whether Publication 1 qualifies as "reasonable notice" is an issue of first impression in this Court, but every district court opinion cited by Highland concluded that provision of Publication 1 was sufficient notice under Section 7602(c)(1). *See Gangi v. United States*, 2 F.Supp.3d 12, 21–22 (D.Mass.2014); *Thompson v. United States*, No. H–08–1277, 2008 WL 4279474, at *5–6 (S.D.Tex. Sept. 11, 2008); *Clearwater Consulting Concepts, LLLP v. United States*, No. 2007–33, 2010 WL 2392107 (D.V.I. Mar. 31, 2010).

I come out the same way, principally because the IRS has concluded the § 7602 notice requirement is satisfied wherever Publication 1 is provided prior to the third-party contact. An IRS memorandum dated March 10, 2006 directed examination agents to use Publication 1 to satisfy § 7602(c)(1). *See Thompson*, 2008 WL 4279474, at *2. On December 6, 2013, the IRS reiterated that position in the I.R.M. at 4.8.8.18.2. The I.R.S.'s interpretations of the Internal Revenue Code as set out in the I.R.M. are entitled to *Skidmore* deference, i.e. deference commensurate with the thoroughness, validity, consistency and persuasiveness of the IRS's analysis. *See Matz v. Household Intern. Tax Reduction Inv. Plan*, 265 F.3d 572, 575 (7th Cir.2001). I find the IRS's position to be persuasive.

Were there any doubt in my mind that provision of Publication 1 satisfies any notice obligation imposed by law on the IRS, the agency has *prima facie* demonstrated that Highland was given actual notice of its intent to go to Barclays. The evidence submitted by the IRS demonstrates that Highland and its attorney were told, at a meeting on January 16, 2014, that the IRS would seek the agreement from Barclays if Highland persisted in its refusal to turn over the document. There is no dispute that the IRS responded to Highland's continuing refusal to turn over the agreement by indicating that the IRS would get it either from Highland or from Barclays. Whether that was communicated in a more or less hostile or emphatic manner is in dispute, but is ultimately irrelevant. Highland was told, in one way or another, that the IRS was going to seek the agreement and that the alternative to Highland turning over the agreement was the IRS's obtaining it from Barclays. *See* McNulty Decl. at ¶¶ 13–15. McNulty, Highland's tax counsel, specifically recalls being told the IRS would get the agreement from Barclays if Highland persisted in refusing to turn it over. *Id.* at ¶ 15. According to 26 C.F.R. § 301.7602–2(d)—a published result of notice-and-comment rulemaking entitled to *Chevron* deference—that oral notice satisfied the statutory notice requirement. *See Chevron U.S.A., Inc. v. Nat'l Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

Thus, Highland received both (1) specific oral notice at the January 16 meeting that the IRS was going to contact Barclays unless Highland itself provided the agreement; and (2) formal written notice of possible third-party contacts from Publication 1, satisfying a separately published agency interpretation of the statutory notice requirement that is entitled to *Skidmore* deference. Highland contests whether those events constituted "notice" but does not dispute that they occurred; thus, there is no need to hold any hearing, especially because Publication 1 notice sufficed. The IRS's provision of both forms

of notice in this case is more than enough to establish, not just *prima facie*, but finally, the IRS's good-faith compliance with the procedural requirements of the Internal Revenue Code, the fourth *Powell* factor.

Highland also contends that the IRS deviated from its own administrative procedures by not trying to obtain the information it summonsed from Barclays directly from Highland. In view of the undisputed history of this case, this contention is laughable. Highland resisted turning over the settlement agreement for three months in the autumn of 2013, refused to comply with a written final demand from the IRS in December 2013, and then failed to provide the agreement at or after the January 16, 2014 meeting. The agency was perfectly within its rights to conclude that Highland would be equally reluctant to turn over other documents relating to the settlement.

■ In any event, under Second Circuit law, a third party summons cannot be quashed on the ground of insufficient notice where, as here, the taxpayer received notice sufficient to allow him to move to quash the summons-meaning he suffered no cognizable prejudice. *Adamowicz*, 531 F.3d at 153. Highland learned of the Barclays summons before the bank responded and made a timely motion to quash the summons served on Barclays. It had enough notice to make this motion. Therefore, it has no cause to complain.

To the extent that Highland argues that very existence of the disputed summons shows the harm stemming from the IRS's supposedly improper method of obtaining the settlement agreement in the first place, that argument fails as well. Highland effectively argues that I should quash the May summons because it would not have issued but for Barclays' March disclosure of the settlement agreement, and the March disclosure was improper because Barclays apparently breached its promise to notify Highland that it was turning over the agreement, which robbed Highland of the chance to timely move to prevent that disclosure. However, this "fruit of the poisonous tree" argument fails. Even if the IRS had improperly obtained the settlement agreement—which it did not—there is no "fruit of the poisonous tree" rule of exclusion in the world of tax summonses. *See Charles v. United States*, 13-50937, 2014 WL 1464459 (E.D.Mich. Apr. 15, 2014). Barclays may have breached a contractual obligation to Highland in March, but that does not cast doubt on the IRS's good faith in issuing the May summons.

## III. Highland Has Failed to Allege Facts Plausibly Raising an Inference of Improper Motive.

Highland's allegations of impropriety neither overcome the IRS's *prima facie* showing nor raise any issue of fact that merits a hearing. While Highland complains about, *inter alia*, the IRS's refusal to allow it to help craft the CCA request, improperly timed document requests, and the January 2014 opening of a 2009 audit, none of these supposed improprieties has any nexus to the IRS's issuance of the May 31, 2014 summons actually disputed here. Furthermore, Highland not only fails to allege prejudice from these supposed bad acts, it admits that IRS supervisors halted all the offending actions when Highland complained. Because the IRS reversed course whenever Highland complained, the offending actions could not possibly constitute the "institutional posture" of the IRS, the only relevant "posture" for establishing bad faith. *See Millman*, 822 F.2d at 309 ("substantial oversight within the IRS" blunted the possibility that an individual agent's intent—

even if improper—could be a basis to quash).

Highland's real complaint is not with the summons it seeks to quash but with the audit whose course it has been unable to control. That is no reason to further delay the IRS's investigation into Highland's 2008 tax return.

## CONCLUSION

For the foregoing reasons, Highland's motion to quash the summons is DENIED and the IRS's cross-motion for enforcement is GRANTED. The Clerk of the Court is directed to remove Docket Nos. 2 and 10 from the Court's list of pending motions and to close the file.